## STANLEY *v.* STATE.

### (*Jackson,* April Term, 1949.)

Opinion filed July 9, 1949.

Ross & Ross, of Savannah, for plaintiff in error.

Nat Tipton, Assistant Attorney General, for the State.

Mr. Justice Burnett delivered the opinion of the Court.

Stanley was indicted jointly with one Aubrey Surratt for housebreaking and larceny. He was found guilty and his punishment fixed at not more than three years confinement in the State Penitentiary, from which this appeal comes.

The record in this case discloses that on Sunday afternoon, September 28, 1947, Stanley and Surratt got together about 12:00 o'clock noon and, as far as the record discloses, remained together until they were arrested at separate times about 1:30 or 2:00 o'clock in the night following this afternoon and night together. They first shot craps and after losing their money they wandered around the streets first here and there in the town of Adamsville, in McNairy County. Sometime during the afternoon or early evening, Stanley cashed a check for $5.00 dollars and of this amount he purchased a pint of whisky for $2.00 dollars and lost the other $3.00 dollars in the crap game. Along about supper time the parties being broke, Stanley says that they came to a restaurant and he ate supper there with two parties, whom he did not know, and they purchased his supper. Surratt is a man 39 years of age while Stanley is 22 years of age. During the whole of this time, that is from 12:00 o'clock noon until after 1:30 in the night following, as far as the record shows, these two parties were seen together con-

stantly in and around this small town. Stanley says though that at the time he is accused of jointly robbing a drugstore that he was not with Surratt but that he had gone to try to get a check cashed. He says though that he was unsuccessful in doing this because all these places of business were closed.

Somewhere between 10:30 and 11:00 o'clock these two parties were seen at a cafe in town which they broke into. The parties who testify about this were riding through the town and, they testify, (apparently without contradiction) that Stanley was in the back of this cafe while Surratt was standing out front looking in the window or it might be inferred was standing there as a look-out. These parties upon seeing this, drove up the street in their car, turned around and came back to be sure of what they saw, after they had turned around and came back, they saw Stanley and Surratt just a little ways above this cafe in front of a picture show, apparently both Stanley and Surratt turned their backs so as not to be recognized. The record further shows without contradiction that about 12:00 o'clock at night on this day, Stanley and Surratt walked about a mile out of town to the home of a taxi cab driver and got this taxi cab driver out of bed and persuaded him to drive them some distance through the country to a place known as Purdy where they secured liquor. After securing this liquor, the taxi cab driver brought both of these parties back to a house of "ill-fame" in the edge of Adamsville and left them there. As the taxi cab driver was leaving them and after he had driven a short way from this house, he was stopped by the sheriff. The sheriff did not find either of the parties in his car and the sheriff then

went on to this house of "ill-fame" and arrested Surratt on a warrant charging Surratt with stabbing someone. Shortly thereafter the sheriff returned and arrested Stanley charging him with loitering around a disorderly house. Meantime, Surratt had been placed in jail, from which he was released the following morning on bond. Apparently Stanley was kept in jail from the time of his arrest until sometime after Surratt had been released.

On the following day the proprietors of a drugstore in this town upon opening up their store, found that it had been broken into and burglarized. Money and property were stolen from the store of a value in excess of $100.00 dollars. A back window in which a fan was placed had been pried open or the leaves of the fan had been pried apart so that a person could enter. This burglary was reported to the sheriff and he in turn made an investigation. Surratt was again arrested or inquiry was at least made of Surratt and he admitted the burglary to the sheriff and charged Stanley as being an accomplice in committing this burglary. As a result of this both parties were arrested and charged and eventually indicted and tried for the burglary of this drugstore.

The twenty-two assignments of error by Stanley are succinctly summarized by the State as making four questions, to wit:

"First, that the testimony of Surratt is insufficiently corroborated to warrant a conviction; Second, that the court erred in denying him a severance. Third, that the court erred in not giving the number of special requests tendered him; and fourth, that counsel for Surratt was erroneously permitted to argue to the jury, over objection, that the plaintiff in error was as guilty as was Surratt."

In the main, the contention is that the corroboration relied upon by the State in support of the testimony of Surratt, an accomplice, is not sufficient to base a conviction of Stanley on. The corroboration that the State relies on might and is summarized by the State as follows:

"1. The plaintiff in error and Surratt were together in Adamsville on the night in question and each time they were seen by any disinterested persons they were together.

"2. Both Surratt and the plaintiff in error left Adamsville together and went to the home of some woman nearby.

"3. At the home of these women there was recovered a pen and pencil set taken during the breaking of this store.

"4. It seems that on the night in question another building in Adamsville was entered and witnesses testify to having seen the plaintiff in error inside this other building with Surratt nearby.

"5. To the Sheriff of McNairy County plaintiff in error made the statement that he was with Surratt when the breaking took place but did not enter the building or have any part in the proceeds."

The sheriff says in his testimony that Stanley admitted being present when this robbery was committed but denied playing any part therein or having anything to do with the robbery. We have very carefully read this record and the record clearly and fully supports the contentions made by the State as to corroboration above quoted.

■ The sufficiency of evidence required to corroborate an accomplice is well set forth in *Clapp* v. *State,* 94 Tenn. 186, 30 S. W. (2d) 214, 217, as follows:

"The degree of evidence which shall be deemed sufficient to corroborate the testimony of the accomplice is for the determination of the jury. The law is complied with if there is some other evidence fairly tending to connect the defendant with the commission of the crime, so that his conviction will not rest entirely upon the evidence of the accomplice."

██ This Court has likewise held that rather slight circumstances may be sufficient to furnish necessary corroboration. *Winfree* v. *State,* 174 Tenn. 72, 123 S. W. (2d) 827. The sufficiency of corroborating evidence where the testimony of an accomplice is in the main depended upon, depends upon the particular facts of each case. The weight of this testimony, that is, of the accomplice, corroborating the accomplice are ordinarily questions for the jury to determine. "That is to say, when the trial judge finds that there is some corroborative evidence, it is his duty to submit it to the jury for them to say, first, whether it is worthy of belief, and secondly, whether, if true it tended to connect the defendant with the commission of the crime charged. It is not necessary to show by independent proof a link between the accomplice's ·testimony and corroborative proof; when the proof claimed to be corroborative tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy a jury that the accomplice is telling the truth it is sufficient. For this purpose, if the accomplice is corroborated as to some material fact or facts, the jury may from that infer that he speaks the truth as to all." Wharton's Criminal Evidence, Vol. 2, Section 754, page 1272.

█ It is not necessary that the corroboration extend to every part of the accomplice's evidence. The same authority last above quoted from says,

"The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight, and entitled, when standing by itself, to but little consideration. Moreover, if the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it cannot be said, as a matter of law, that the verdict is contrary to the evidence." Section 753, page 1271, *supra*.

■ It seems to us that the only human and logical conclusion that humans could come to under the evidence of this case, wherein the parties have been together repeatedly on every occasion that anyone had seen them during the entire afternoon and night, their financial condition, (having lost all their money), both drinking and both apparently wanting to go a house where women of "ill-fame" live (even though they were married and had children), that is the plaintiff in error and Surratt; both wanting whisky; both having been seen apparently robbing another place and both being seen together right up to almost the moment of when the crime must have been committed, even though the record is silent as to when it was committed; and both being together immediately after the crime must have been committed on up until the time of their arrest. Under such a set of circumstances, we can hardly see how the jury could have concluded otherwise than that Stanley was a participant in this crime. We think that under these facts as established there is ample corroborating evidence to support the testimony of the accomplice that Stanley was a participant therein.

■ These proven facts certainly entitle the jury to draw reasonable inferences therefrom and this Court will

not substitute its judgment or inferences from these proven facts, this being a function of the jury. *Foster* v. *State*, 180 Tenn. 164, 172 S. W. (2d) 1003.

■ ■ Prior to going to trial, the plaintiff in error filed a motion for a severance. This motion was grounded largely upon the fact that Surratt, who was jointly indicted with Stanley, had confessed and implicated the plaintiff in error in the commission of this crime. This information reached the plaintiff in error through a statement that he or his counsel saw in the Commercial Appeal. Upon the trial no confession or statement of Surratt was introduced. Surratt took the stand and testified in his own behalf in apparently an attempt to implicate the plaintiff in error in the crime with him. The trial judge denied the motion for a severance.

"The rule in this State is that the trial judge will not be put in error for his failure to grant a severance where the defendant was not prejudiced by the refusal and the trial judge did not abuse this discretion." *Stallard* v. *State*, Tenn. Sup,. 215 S. W. (2d) 807, 811.

We have very carefully, as heretofore said, examined this record and can not find the slightest indication wherein the trial judge abused any discretion in denying this severance.

■ The question of a severance is somewhat interlocked and intertwined with the question hereinbefore considered in reference to corroboration of the accomplice's testimony. The question is also very closely connected with a matter very earnestly argued at the hearing, before us, as to the argument of counsel for Surratt in this case. This question will be considered later herein. At the trial of the case, these two parties being

jointly tried, counsel for Surratt and counsel for the plaintiff in error apparently cooperated in selecting the jury to try their respective clients. After the jury was selected Surratt plead guilty. Upon the State's completion of its case as to Stanley, Surratt then took the witness stand and told his story as to how the crime was accomplished implicating Stanley in the crime as being equally guilty with him in breaking and entering this building and stealing these various things. Counsel for the plaintiff in error strenuously objected to this testimony but the trial court overruled it, and we think properly so. This Court has held in *Thompson* v. *State,* 171 Tenn. 156, 171, 101 S. W. (2d) 467, that upon a separate trial a co-defendant might be used as a witness against the party requesting the severance. If this can be done, and obviously out of regard for the rights of the State, it must be done in many instances because there would be absoutely no other way to hold a party guilty of the crime except through testimony of his accomplice properly corroborated by circumstances and circumstantial evidence sufficient to support and corroborate the testimony of this accomplice. The State is entitled to some rights also. In making this statement, we do not mean to in the slightest weaken the rights which the accused has in the criminal court.

Numerous special requests were seasonably tendered on behalf of the plaintiff in error for specific charges. All of these special requests were in effect directed to the quantum and sufficiency of proof necessary to corroborate the testimony of the accomplice. The charge of the trial court upon the question of the necessity for corroboration of an accomplice is as follows:

"The defendant, Aubrey Surratt, was and is an ac-

complice in crime in this case. Surratt is a competent witness in the case in his behalf, and also for or against his co-defendant, Stanley. However, the court charges the jury that the defendant, Stanley, cannot be convicted upon the uncorroborated or unsupported testimony of Surratt. The corroborating or supporting evidence need not necessarily be the evidence of an eye witness to the offense, but the corroborating and supporting evidence must be such independent facts and circumstances to connect Stanley with the offense itself, and such as, when taken together with the evidence of Surratt, convinces the jury of Stanley's guilt, beyond a reasonable doubt.

"The court further charges you that the mere presence of the defendant, Jim Frank Stanley, at the time of the commission of the offense is not a sufficient corroboration of the testimony of the defendant, Aubrey Surratt, unless you should find from the proof, beyond a reasonable doubt, that defendant, Stanley, knowingly, voluntarily and with common intent to commit the crime, joined with the defendant, Aubrey Surratt, in the actual commission of the crime charged in the three counts of the indictment."

This instruction or charge of the court to the jury in the instant case is partially made up of one of the special requests tendered by counsel for the plaintiff in error. We think without commenting on the specific requests tendered that one upon reading and analyzing the charges given, above quoted, will readily reach the conclusion that on the whole the charge is fair and just and is a sufficient charge on the question of the necessity for corroboration of an accomplice. One of these special requests asked, sought to tell the jury that they

must look at this testimony ''with caution''.  It seems to us that when the trial judge charges the jury as he did, that conviction could not be had upon the unsupported testimony of Surratt, that he was an accomplice, that this within itself was tantamount to telling the jury that the testimony was not favored in the law to the same extent as that of an unbiased witness, and that most any average man would reach the conclusion from the instruction that the testimony of Surratt was to be received with caution.  On the whole we think that the charge sufficiently covers all of these requests and there is no prejudicial error made in refusing any one of them or all of them as a whole.

A final contention made in the brief and assignments of error and the one that was very forcibly and strenuously argued before this Court is that the plaintiff in error was very much prejudiced by Surratt's counsel's argument to the jury.  Counsel's argument was taken down and appears in the transcript and likewise appears twice in the brief for the plaintiff in error. It appears from the record that this argument was made in the process of the trial following an argument of one of counsel for the plaintiff in error.  The argument is to the effect that Stanley is just as guilty as Surratt, that Surratt should really have more consideration by the jury than Stanley because Surratt was man enough to come up and confess his guilt while Stanley in effect tried to lie out of it. It appears too that after this argument of Surratt's attorney was made and proper objection made thereto, which was overruled by the trial court, that senior counsel for Stanley had an opportunity to answer in his argument.

This argument appears to us—we have read it twice—as nothing more than the argument made by counsel for

the plaintiff in error Stanley. In other words, the argument made here is that Surratt is an older man and an experienced man and is a criminal, who has been indicted on several other occasions. We can readily appreciate the fact that it was to Surratt's advantage and was the duty of his counsel in representing him to argue as he did to try to reduce the sentence of his client if possible. This being a matter for the jury, it was natural that he would try to put as much of the blame or at least an equal part thereof on Stanley. We can see nothing prejudicial from a legal standpoint in this argument. It is true that it might have been injurious to Stanley in the effect that it amounted to another argument as to his guilt but it was a perfectly legal and fair argument insofar as legal prejudice is concerned.

This Court in *Richards* v. *State,* 91 Tenn. 723, 20 S. W. 533, 534, 30 Am. St. Rep. 907, in discussing the right of a co-defendant to testify to facts injurious to another defendant, said:

"Where one of several defendants on trial together voluntarily becomes a witness, he is a witness for all purposes. If he knows facts injurious to a co-defendant, they may be brought out either by his own counsel or by the State. The witness' best line of defense for himself may lie in evidence involving the guilt of his co-defendant. On what principle shall it be said that such testimony would be inadmissible? If admissible in his own interest, how is its effect upon his co-defendant to be prevented? Practically it could not fail to be injurious and prejudicial even if the jury were instructed to disregard it as to the co-defendant affected. We know of no principle which would exclude any competent evi-

dence, simply because it came from a co-defendant testifying for himself under the statute.''

This statement made long ago by this Court with reference to the testimony of a co-defendant is equally applicable to the argument of counsel of the co-defendant. This argument is perfectly proper. Clearly from the testimony of Stanley herein he was attempting to put the whole blame of this robbery upon Surratt. Why then was it not proper for Surratt to testify under such conditions likewise for his employed counsel to argue, from the evidence in the case, that Stanley was equally guilty?

We have read this record and brief and listened to argument herein with a great deal of interest. Both briefs for the plaintiff in error and the State and arguments made by counsel were unusually fine and well done. We have likewise made some independent investigation of the authorities, under the record as a whole we are satisfied with this conviction which must be affirmed.

All concur.