**STATE of Tennessee, Appellee,**

v.

**James Robert LINGREL, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 26, 1985.

Permission to Appeal Denied by Supreme Court May 13, 1985.

Richard L. Elliston, Cleveland, for appellant.

W.J. Michael Cody, Atty. Gen. of Tenn., Robin J. Mitchell, Asst. Atty. Gen. of Tenn., Nashville, Jerry N. Estes, Dist. Atty. Gen., William J. Brown, Asst. Dist. Atty. Gen., Cleveland, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, James Robert Lingrel, was convicted of aggravated rape and received a penitentiary sentence of twenty-five (25) years.

In this appeal, the defendant contests the evidence, and also contends that the trial court erred in allowing certain evidence to be admitted. We find no reversible error.

The State's evidence showed that in June, 1980, the defendant's wife, Virginia Lingrel, was operating a day care center in their home. The victim, being a four year old girl at that time, attended the nursery school. The victim was eight years old at the time of this trial.

According to the young victim's testimony, the defendant would lick her vagina

with his tongue and would stick his finger into her vagina. She indicated that when his finger went into her, it went in up to the first joint of his finger. At one point in her testimony, she testified that the defendant stuck "his penis in my bottom." She said he would do these things every day. She testified that these incidents took place in the basement at the nursery school, and that the defendant would set her on a box containing worms. She stated that she told her mother about these incidents. The defendant had told her not to tell her mother or anyone else. The victim said she was afraid of the defendant. She told her mother because she wanted the defendant to stop. She said that the last time that the defendant abused her occurred the day before she told her mother.

The victim's mother testified and said that her daughter attended Mrs. Lingrel's day care center off and on from October, 1979 through June, 1980. She stated that on June 17, 1980, her daughter told her that the defendant "stuck his finger down there" and "put his tongue down there," the daughter indicating "between her legs" in her vagina area. The mother had her daughter examined and discussed the matter with law enforcement authorities. The mother testified that over a period of time she tried to talk to the authorities in an effort to get something done about the matter but was unsuccessful. In 1983, at the suggestion of her husband, she contacted Detective Andy Lockhart and related to him the facts and circumstances that had previously occurred.

Other evidence showed that after Detective Lockhart was informed about the matter, he had the defendant come to the police station. At that time, the defendant gave Detective Lockhart the following statement:

This is a statement given by James Robert Lingrel to Andy Lockhart at the Bradley County Justice Center on November 30, 1983, at 4:40 p.m. In the summer of 1980 my wife ran a day care center on 20th Street, N.W. I was there one evening with a little girl named (name omitted by the Court) who was about four or five years old at the time. We were down in the basement by ourselves at that time. I kissed the little girl and she took her panties off and laid down. I stuck my head between her legs and licked her vagina. This is the only incident that occurred between me and the little girl. This statement is true to the best of my knowledge and no threats or promises have been made or given to me to make this statement. Signed James R. Lingrel.

Dr. John Appling, a physician in Bradley County, testified that when he examined the victim in June, 1980, she related that the defendant "had performed oral sex [on her] or had licked her on her bottom and that he also used his finger on her bottom." Dr. Appling didn't "believe there was any evidence of penetration at the time," but that the act of cunnilingus would not leave evidence of penetration. Also, it was Dr. Appling's opinion that the insertion of a portion of one's finger to the length of the first joint would not necessarily leave evidence of penetration.

The defendant testified and denied that he ever sexually molested the victim. He said he never touched her, and that the statement attributed to him was incorrect. He explained that he signed the statement because "Andy Lockhart handed me a bunch of papers and told me to sign them." He stated that he was not good at reading and did not read the statement before signing it. He said he could have said the words in the statement, but did not recall doing so. Further, he testified that when the detective told him about the charges, he "was just put in a daze and all and I wasn't realizing what I was saying or nothing." He admitted that Detective Lockhart read the statement to him before he signed it, and that he just signed it without realizing what he was doing. He admitted that a box of fishing worms was kept in the basement, but denied that he ever took the victim to the basement, stating that she knew of the worms because his son talked about them all the time.

The defendant's wife, Virginia Lingrel, testified the victim was left in her care on five (5) occasions in June, 1980. She did not remember anytime that the child was out of her presence on those occasions. She said she went to the police station with her husband when he was questioned, and that when he came out of the interrogation room, he was "very upset" and was "just stunned." She said her husband had reading problems.

Two (2) other employees of the day care center testified. One stated that the defendant did not participate in caring for the children. The other said he would assist with the children after he came in from work. One witness did not remember the victim being there, but the other one did and said Mrs. Lingrel always knew where the children were, and that the children did not appear to be afraid of the defendant.

In deciding whether the evidence in a given case is sufficient to support a defendant's conviction, we must consider the evidence in the light of several settled principles of law, to-wit:

■ A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in favor of the State's theory. *State v. Hatchett,* 560 S.W.2d 627 (Tenn.1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832 (Tenn. 1978). A verdict against the defendant removes the presumption of innocence and raises a presumption of guilt upon appeal. *State v. Grace,* 493 S.W.2d 474 (Tenn.1973). Findings of guilt in criminal actions will not be set aside unless the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. T.R.A.P. 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ The jury accredited the testimony of the State's witnesses. The testimony of the young victim, her mother, and Dr. Ap-

pling, along with the defendant's implicating statement, is more than sufficient to support the jury's verdict. The proof clearly satisfies the evidentiary tests as outlined in T.R.A.P. 13(e) and *Jackson v. Virginia, supra.* We find no merit to the defendant's evidentiary complaint.

Next, the defendant contends the trial court erred in allowing his statement to be admitted into evidence, arguing that the evidence did not show that he made a knowing and voluntary waiver of his rights.

■ At the suppression hearing, Detective Andy Lockhart testified that the defendant was given his *Miranda* rights and that the defendant signed the waiver form. He said the defendant spoke freely and that no force or coercion was used in obtaining the statement. He read the defendant's statement back to him. The defendant gave no indication that he had any problems in reading or understanding the statement. Rather, he agreed that it was a true statement and signed it. There was no evidence at the suppression hearing to the contrary.

The trial court found that the defendant's statement was voluntarily given and that he intelligently and knowingly waived his rights. The evidence clearly supports the trial court's findings.

Another contention by the defendant is that the trial court erred in allowing the State to reopen its proof to allow the introduction of Dr. Appling's medical notes.

After Dr. Appling testified, and after the State had rested its case, the trial court permitted the doctor to be recalled. Dr. Appling then testified that since he had left the witness stand, he had reviewed his medical notes in an effort to refresh his recollection. He then testified that when he examined the victim, he asked her what the defendant had done to her. From her response, Dr. Appling made an entry in his notes, reading "Perform cunnilingus and introduced finger." His notes showing these words were filed as an exhibit.

█ It is in the trial court's discretion to allow a party to reopen proof. *Clariday v. State*, 552 S.W.2d 759, 770 (Tenn.Cr.App. 1976). Also, it is proper to allow a witness to refer to notes to refresh the witness' recollection. Dr. Appling was on the stand and available for cross-examination on his medical notes. We find no error in this regard.

█ Additionally, we see no problem regarding the defendant's specific complaint that the entry of Dr. Appling's medical notes amounted to a discovery violation. The defendant argues that these notes were not provided to him in response to his pretrial discovery motion. Clearly the defendant sustained no prejudice. The victim's testimony and the defendant's statement unquestionably established the elements of aggravated rape. Also, we point out that the doctor's medical notes showing the statement quoted above added nothing of any significance to the testimony he gave when he first testified. In his initial testimony, to which no objection was made, he said practically the same thing when he stated that the victim related to him that the defendant "had performed oral sex or he had licked her on her bottom and that he also used his finger on her bottom." We find no merit to this complaint.

The defendant's two (2) final issues concern the State's introduction into evidence proof of a prior rape conviction and a reference to his confession in that case.

In 1963, the defendant was convicted in Georgia of rape and received a life sentence. He was released from custody on parole on September 21, 1971, and his parole was commuted on January 7, 1976. His signed confession in that case contained a statement at the end, reading:

> I can read a little and write my name. I have had this statement read to me by the officers.

At a jury-out hearing, the trial judge ruled that evidence of the defendant's prior rape conviction was admissible, acquiescing in State's counsel's comment that he was finding that "the probative value outweighs the prejudicial effect." The trial judge also ruled that the defendant could be cross-examined on the above quoted portion of his confession in the prior case. Subsequently, when the State examined the defendant on these matters before the jury, the trial judge gave an instruction to the jury, limiting the use of the evidence to the issue of the defendant's credibility.

In *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976), our Supreme Court adopted Rules 608(b) and 609(a) and (b) of the Federal Rules of Evidence to deal with the issue of the use of prior convictions to impeach the credibility of a witness. Rule 609(b) states:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

█ The record shows that more than ten (10) years had elapsed since the defendant had been released from confinement on this prior crime. Except for the present crime, the defendant had committed no other crimes since his release. Evidence of a prior conviction for a crime similar to the crime on trial should be used sparingly. *Long v. State*, 607 S.W.2d 482 (Tenn.Cr.App.1980). Obviously, in some cases, such proof carries with it the possibility, if not the likelihood, of prejudicial effect against the defendant. In our opinion, the evidence at the jury-out hearing on this question did not develop sufficient specific facts and circumstances that would support the trial court's ruling on the ad-

missibility of this prior conviction. After considering the entire record, we conclude that evidence of this prior conviction was improperly admitted.

 Regarding the issue concerning the State's reference to the defendant's confession in the prior rape case, the State reasons that since the defendant challenged the validity of his confession in the present case by contending that he did not know what he signed, then it was proper for him to be examined on his confession in the prior case to show his familiarity with the interrogation process. We fail to see the logic of this reasoning. In *Morgan, supra,* the Court specifically limited the inquiry regarding a prior conviction to the fact of the former conviction and the name of the crime. *Morgan, supra,* 541 S.W.2d at 389.

We are not persuaded by the State's arguments on either of these issues. However, given the other evidence in the record that establishes both the certainty of the defendant's guilt and his lack of credibility on the stand, we find that these errors connected to the introduction of the evidence about the defendant's prior crime were harmless and had no effect on the outcome of the trial. These errors did not prejudice the jury against the defendant. As stated, the evidence, apart from this evidence, clearly established the defendant's guilt beyond a reasonable doubt, and the punishment fixed by the jury was only five (5) years above the minimum punishment for aggravated rape. T.C.A. § 39–2–603. Considering that the jury could have fixed a sentence up to and including life, we find that the punishment of twenty-five (25) years was most reasonable in light of the aggravating circumstances present.

Therefore, under Tenn.R.Crim.P. 52(a) and T.R.A.P. 36(b), we conclude that a reversal of the defendant's conviction for these errors is not merited.

The judgment of the trial court is affirmed.

O'BRIEN and CORNELIUS, JJ., concur.