# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
## AUGUST 1997 SESSION

**FILED**

October 24, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE** | ) | **C.C.A. No. 01C01-9607-CR-00320** |
| | ) | |
| | ) | **SUMNER COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JANE WHEATCRAFT** |
| **STANLEY LAWSON** | ) | **JUDGE** |
| | ) | |
| | ) | (Incest) |

**FOR THE APPELLANT:**

**JOHN E. HERBISON**
Attorney at Law
2016 Eight Avenue South
Nashville, Tennessee 37204

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General & Reporter

**DARYL J. BRAND**
Assistant Attorney General
450 James Robertson Parkway
Nashville, Tennessee 37243

**SALLIE WADE BROWN**
Assistant District Attorney General
113 West Main Street
Gallitin, Tennessee, 37066

**OPINION FILED:**_____

**AFFIRMED**

**JOE H. WALKER, III**
**Sp. JUDGE**

## OPINION

The defendant appeals a jury verdict finding him guilty of twenty-five counts of incest.   The defendant was sentenced to seven years on each count, with counts one through ten to be served consecutively, and the others to be run concurrently.   The jury assessed fines of ten thousand dollars per count.  The court reduced the fines to two thousand dollars per count.

The defendant presents the following issues for consideration:

1.  Whether the proof was insufficient as a matter of law to sustain a conviction, in that the defendant was convicted on the uncorroborated  testimony of an accomplice; and whether the trial court erred through its instructions by submitting to the jury the question of whether the victim was an accomplice so as to require corroboration of her testimony.

2.  Whether the admission of a redacted version of an audio tape recording of a conversation between the defendant and the victim was error.

3.  Whether the trial court erroneously permitted the victim to testify from notes.

4.  Whether the trial court erred by allowing a statement of the defendant to be submitted to the jury.

5.  Whether the trial court erroneously excluded cross examination of the victim concerning certain prior statements.

6.  Whether the trial court erroneously permitted the jury to take transcripts of a tape recorded conversation between the defendant and victim into the jury room during deliberations.

7.  Whether the trial court erroneously ordered consecutive sentencing as to ten counts of the indictment; and whether this was a harsher effective sentence on retrial, violating due process.

## Procedural Background

The defendant was indicted on twenty-six counts of incest, alleging that he sexually penetrated his adopted daughter, on twenty-six specified dates. The case was tried, with the state dismissing one count of the indictment. The jury found the defendant guilty on the remaining twenty-five counts. After a sentencing hearing, the defendant was sentenced to six years in prison on each count, with ten of the sentences to be served consecutively, and the others to run concurrently.

The defendant filed a petition for post-conviction relief, alleging ineffective assistance of counsel. After a hearing, the petition was sustained, and the convictions were set aside, and the defendant was granted a new trial.

The defendant moved to suppress certain statements he made in a tape recorded conversation with the victim, and after an evidentiary hearing, the motion was denied, with the court proposing certain redactions. As redacted, the tape and transcription of the conversation were admitted into evidence at trial, and submitted to the jury.

The jury at re-trial found the defendant guilty on all twenty five counts of incest.

## Factual Background

The defendant was the step father of the victim, and adopted her when she was four years old. The acts of incest alleged in the indictment occurred when the victim was fifteen years of age, and in the ninth grade.

The victim lived with her mother, the defendant, and her younger brother, who was the son of the victim's mother and the defendant. The family lived in a double wide trailer on fourteen acres in Sumner County.

At the time of most of the incidents of incest, the victim's mother would not be at home. The victim's mother worked at a store in Nashville, and usually spent the entire weekend in Nashville, staying at her own mother's home. Most of the acts of incest

occurred during those weekends.  One act (count 22) occurred while the mother was at home but asleep.

The younger brother was usually at home, but slept in another room of the trailer. The defendant would block the doorways to prevent the brother from observing the sexual activities.  On one of the occasions the brother was outside playing, and the defendant locked him out of the trailer. On another occasion, the brother walked into the defendant's bedroom during anal incest of the victim, and the defendant tried to cover up the victim so that the brother would not see her.

At the trial, the victim described in detail the sexual activities that occurred on each of the twenty-five dates specified in the indictment.  She testified that she had independent recollection of the events, although she used notes formulated from a calender to help keep straight which events occurred on which precise dates.

The victim related that on several occasions she would watch x-rated videos with the defendant, and the defendant would have the victim act out fantasies for him.  On certain occasions the defendant would argue with the victim about playing the stereo too loudly, or going out with boys, or meeting friends.  After those arguments the defendant would engage in incest with the victim.

The victim recounted the numerous instances, by specific date, on which the defendant sexually penetrated her vaginally, orally, and anally.  On at least one occasion the sexual intercourse was extremely painful to the victim.

The victim requested that the defendant stop having sex with her and simply act as her "daddy," and he agreed.  Shortly after that promise, they were wrestling on the bed and the defendant began feeling her and then engaged her in sex.  On several other occasions the victim discussed with the defendant stopping the sexual encounters, but the relationship continued sexually.

In March, 1993, because the victim was late for her period, the defendant purchased an over-the-counter pregnancy test kit.  When the results were negative, the defendant celebrated with incest on the victim.  Shortly after that, the victim told her guidance counselor in high school about the sex with her adoptive father.  The victim was then interviewed by a sexual abuse counselor from the Tennessee Department of

4

Human Services. The complaints were reported to a detective with the Sumner County Sheriff's Department, who requested that the victim wear a concealed microphone while speaking with her adoptive father. The victim called the defendant, and arranged a time and place for a meeting. At the deputy's suggestion, the victim told the defendant that she had run away, but that they needed to meet and talk. They arranged to meet at a local restaurant.

The deputies were present at the restaurant, and monitored and recorded the conversation between the victim and the defendant. After hearing the conversation through the concealed microphone, the deputies confronted the defendant, and read him the <u>Miranda</u> warnings, and transported him to the sheriff's department. The defendant was again advised of his <u>Miranda</u> warnings, and signed a waiver of those warnings. The defendant was asked if he knew why they wanted to talk to him and he answered "a problem involving my daughter." The detective asked the defendant if he knew what the allegations were, and the defendant responded, I believe it's about me molesting or raping my daughter. The defendant then requested an attorney, and the questioning ended.


### Sufficiency of the Proof - Accomplice


The defendant maintains that the evidence is insufficient as a matter of law in that the defendant was convicted on the uncorroborated testimony of an accomplice. The defendant further submits that the trial court erred through its instructions by submitting to the jury the question of whether the victim was an accomplice so as to require corroboration of her testimony.

*Accomplice*

An accomplice is one who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime. <u>Conner v. State</u>, 531 S.W.2d 119 (Tenn. Crim. App. 1975). The test is whether or not the alleged accomplice can be indicted for the offense. If, however, the witnesses' participation in the crime is the result of force, coercion, duress, or undue influence so that the participant does not act

5

voluntarily, with the same intent as the principal, then the witness is not an accomplice. Henley v. State, 489 S.W.2d 53 (Tenn. Crim. App. 1972); State v. Green, 915 S.W.2d 827 (Tenn. Crim. App. 1995).

If the offense of incest is committed without the victim's consent, then corroboration of the victim's testimony is not required. Scott v. State, 207 Tenn. 151, 338 S.W.2d 581 (1960).

This court finds that there was sufficient evidence in the record to submit to the jury the question whether the victim consented, and thus was an accomplice.

The victim testified that she wanted "a daddy," and the defendant would not be that for her. She felt hurt by all of the acts of incest, which she described in great detail. She wanted him to be her dad instead of doing what he did to her. She and her father had heated discussions about the sexual relations he was engaging her in. Her father had told her to perform these acts, and began to take it for granted.

The victim described in detail each incident covered by each separate count of the indictment. Several of the incidents occurred after the defendant became mad at her. In the incident set out in count two, the defendant accused her of playing the stereo too loud, got mad, and began fighting with her. He tied a door to the bedroom of the victim's brother, the only other person in the house. He put a chair against the door, and engaged her in incest activities.

In the incident alleged in count four of the indictment, he got x-rated movies for the victim to watch, and performed anal sex on the victim. She testified that it hurt real bad. She said something at that time about it.

In the incident alleged in count five of the indictment, the defendant got mad when she had gone out with friends. He yelled at her, and then had sex with her using a mirror.

On another occasion her father bought her a douche, and told her to hide it from her mother. On one occasion, she missed her period, and her father bought a pregnancy test. He was afraid she might be pregnant with his child.

On another occasion, the victim had gone out with her friend, Greg, and the defendant got mad at her, and told her to tell anyone who asked her out that she

6

already had a boyfriend. He covered the windows with towels before engaging her in incest.

In the incident set out in count ten, the defendant rented x-rated movies and made her act out parts of the video.

In the incident set out in count eleven, the victim had missed a 10:00 p.m. curfew, and the defendant became angry, and was not okay until after sex with the victim.

In the incident alleged in count twelve, the defendant made the victim put on her mother's lingerie, and the defendant ripped it off of her before engaging her in incest.

In the incident alleged in count thirteen, the defendant made her dance while wearing lingerie before engaging her in incest.

In the incident alleged in count fifteen, the defendant would not let her go out with her friend Misty, and told her she had to stay home; that he was going to try strawberry jell on her while engaging her in incest.

In the incident set out in count seventeen, the victim testified that the acts of incest hurt real bad, and she screamed out. The defendant continued to perform the act anyway.

In the incident set out in count eighteen, the victim was on her period, and the defendant did not want intercourse. He wanted anal incest, and made her put a towel on the bed. The victim's brother walked in and the defendant got mad and screamed at him. The defendant was on top of her, and covered her up. The brother started crying.

In the incident set out in count twenty, the defendant was looking out the door to the trailer at her brother while he was outside playing. He required the victim to perform oral sex on him, then told her that she could go out and play.

In the incident set out in count twenty-four of the indictment, the victim had asked the defendant if they could stop doing all this, and if he would just be her daddy. They began wrestling on the bed, and the defendant started touching her. The defendant then engaged her in incest.

7

The victim testified that she did not tell anyone because she was "scared." She did not want to take her brother's father away from him, and she did not want to hurt her mother.

From these circumstances, as well as the position of trust occupied by a parent with respect to a daughter, and the nature of the sexual acts performed, there was sufficient evidence for a reasonable trier of fact to find or infer that the victim was not a consenting participant, and was thus not an accomplice.

The trial court correctly submitted this issue to the jury.

*Corroboration*

In State v. Delph, slip opinion number 257 (Ct. Crim. App. 1986), the appellant was convicted of incest on the testimony of his step-daughter, which was corroborated by the appellant's confession. A confession must be considered in connection with all the other evidence to establish the defendant's guilt or innocence. The victim/accomplice's testimony was corroborated by the appellant's confession, and the appellant's confession was corroborated by the victim/accomplice's testimony. Thus while neither her testimony standing alone nor the confession standing alone would be sufficient to establish that the appellant had committed a crime, these bits of evidence taken together can establish the crime.

In this case, the taped conversation between the defendant and victim corroborated numerous elements and details of the victim's testimony. The conversation referred to incidences in which x-rated videos were watched, when they acted out what they watched. The defendant apologized to the victim. The defendant explained that they were performing these acts because he kept telling himself that he loved the victim. He kept living a different life because there had been things in his life, in his younger life, that he never got to experience, and every time he got involved with someone it was always someone else lying about how they felt about him; and "that's no excuse...I just wanted to...for one time...experience a loving relationship." The defendant acknowledged prior discussions when they had talked about stopping it, and that he had said that they were going to stop it. Immediately after discussing the defendant's promises to stop the sexual activities, the victim asked what happened

8

Saturday. The defendant replied that was his mistake. The defendant said "I didn't mean to do that, honey...there were things...that you had been saying to me for the last week or so...and I thought you were throwing me signals...I misunderstood you." When the victim would ask why the defendant had sex with her, he would apologize. When the victim would cry that he had hurt her, he would acknowledge that fact. When the victim asked him to promise that we'll never have to have sex again, he answered no, never.

The statements made by the defendant shortly after his arrest indicating that he knew the detectives wanted to ask him about allegations about "me molesting and raping my daughter," support an inference that could be made by the trier of fact that such conduct had occurred.

The appellate courts have addressed the nature, quality, and sufficiency of the evidence required to corroborate the testimony of an accomplice on numerous occasions. In Sherrill v. State, 204 Tenn. 427, 321 S.W.2d 811 (1959), the supreme court said:

> The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.

This corroborative evidence can be direct evidence, or circumstantial. The corroboration need not of itself be adequate to support a conviction, but it must be sufficient to meet the requirements of the rule and it is sufficient if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. Sherrill, 204 Tenn. at 435; 321 S.W.2d at 815.

The evidence must confirm in some manner that (a) a crime has been committed and (b) the accused committed the crime. State v. Boulton, 214 Tenn. 94, 99; 377 S.W.2d 936, 939 (Tenn. 1964).

The evidence corroborating the testimony of an accomplice may consist of direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. The quantum of evidence necessary to corroborate an accomplice's

9

testimony is not required to be sufficient enough to support the accused's conviction independent of the accomplice's testimony. State v. Sparks, 727 S.W.2d 480, 483 (Tenn. 1987). Nor is it required to extend to every portion of the accomplice's testimony. Stanley v. State, 189 Tenn. 110, 116-17, 222 S.W.2d 384, 387 (1949). To the contrary, only slight circumstances are required to corroborate an accomplice's testimony. Sparks 727 S.W.2d at 483; Stanley, 189 Tenn. at 116-17, 222 S.W.2d at 387; Bolton v. State, 591 S.W.2d 446, 448 (Tenn. Crim. App.), per. app. denied (Tenn. 1979). The corroborating evidence is sufficient if it connects the accused with the crime in question. Stanley v. State, 189 Tenn. at 117, 222 S.W.2d at 387.

In this case the defendant acknowledged in his statements a continuing course of conduct to corroborate the allegations of the victim.

In State v. McKnight, 900 S.W.2d 36 (Ct. Crim. App. 1994), a victim/accomplice who was sexually abused by the defendant gave a detailed description of the defendant's acts against him. This was corroborated by other victims' testimony describing similar patterns of conduct. The entire course of conduct was held to furnish sufficient corroboration, even though the testimony of the other victims did not describe the specific incidents of which the victim/accomplice complained.

In Bethany v. State, 565 S.W.2d 900 (Tenn. Crim. App. 1978), the testimony of a non-accomplice witness that he saw the defendant commit four of the sex offenses against the victim was corroborative evidence from which a jury could find that the defendant committed two other offenses in the same pattern.

The defendant in this case corroborated some specific incidences testified to by the victim. This corroboration was in the taped conversation heard by the jury. He also referred to a continuing pattern of incestuous conduct. His own statements corroborated the existence of a sexual relationship, continuing through the indictment period and up to shortly before his arrest.

The defendant's statement to the police upon his arrest, further corroborated these illegal acts.

There was sufficient evidence before the jury as the trier of fact to determine that the victim was not an accomplice, and therefore no corroboration of her testimony

10

would be required.  Also, there was sufficient evidence before the jury as the trier of fact to determine that her testimony was corroborated if the victim was an accomplice.

This issue is without merit.

## Redacted Version of a Taped Conversation

The defendant filed a motion to suppress the tape-recorded conversation with the victim.  After a hearing, the trial court suggested a redacted version of the taped conversation, and allowed the state to admit the redacted version as a trial exhibit, and play the redacted version of the tape recording for the jury.

The defendant alleges that the admission of the tape recording even as redacted, injected "other crime" evidence into the trial in violation of Tenn. R. Evid. 404(b).  The court has reviewed the tape and transcript presented the jury, and finds that as redacted it did not include any explicit references to bad acts of the defendant before the indictment period.

The defendant complains that though prior bad acts were redacted from the statement, the statement may have included some statements by the defendant responding to the excised references by the victim to prior bad acts.  However, the bad acts were unknown to the jury, and the defendant's responses to the redacted prior bad acts also referred to a continuing course of sexual conduct between the defendant and victim, occurring during the indictment period.  There were other matters discussed on the tape including the x-rated videos, the broken promises to stop having sex, the one particular Saturday night episode, which were separate from the redacted portions of the tape.

The court finds that the trial court was very conscientious in efforts to redact the statement and tape.   The defendant had been granted a new trial due to references to prior bad acts, and the trial court was very careful during the motion hearing, and during the trial itself, to prohibit references to prior bad acts of the defendant.

The court having found that the tape and transcript were properly redacted, also finds that the admission of the redacted tape did not violate Rule 403, and did not

11

violate the constitutional due process guarantees of the Fourteenth Amendment.

It is within the discretion of the trial court to determine whether to admit evidence of a tape or transcript of the tape, and that discretion will not be disturbed absent abuse. See State v. Elrod, 721 S.W.2d 820, 823 (Tenn.Crim. App. 1986). The trial court made a finding that the probative value of the tape as redacted outweighed the danger of unfair prejudice.

The trial court did not err in admitting the tape recording and allowing the jury to use the transcript. See State v. Smith 868 S.W.2d 561 (Tenn. 1993).

**Victim's Use of Written Notes to Refresh Her Recollection**

The defendant alleges that the trial court erroneously permitted the victim to testify from notes.

The trial court had an extensive jury out hearing and determined that the victim had independent recollection. The court allowed the victim to refer to the notes to refresh her memory and keep straight the dates on which particular events occurred.

The general rule is that a witness may refer to notes to refresh her recollection. State v. Lingrel, 692 S.W.2d 41 (Tenn. Crim. App. 1985). The trial court has wide discretionary authority over the propriety, scope, manner and control of the examination of witnesses. State v. Carpenter, 773 S.W.2d 1 (Tenn. Crim. App. 1989).

The defendant complains that the notes should not have been used as they did not fall within Rule 803(5) of the Tennessee Rules of Evidence. Rule 803(5) applies to a writing shown to have been made or adopted by the witness when the matter was fresh in the witness's memory. Recorded recollection is used in lieu of a witness' testimony when that witness cannot recall the event in any meaningful way. Neil P. Cohen et. al., Tennessee Law of Evidence § 803(5).1 (3d ed. 1995).

A writing used to refresh one's memory is not a hearsay exception, but rather a means to facilitate a witness' testimony when he or she cannot completely remember the details of an event. See Tenn. R. Evid. 612. When a witness' memory is refreshed,

12

the adverse party may inspect the writing, cross-examine the witness and introduce portions into evidence. Tenn. R. Evid. 612.

In this case the victim testified she had independent present recollection of all key events, and recalled the specific dates when reminded by her notes which she had derived from the calendar. Her use of notes fell under Tenn. R. Evid. 612.

The Advisory Commission Comments to Rule 612 suggest guidelines by which a witness may refresh her memory: "The direct examiner should lay a foundation for necessity, show the witness the writing, take back the writing, and ask the witness to testify from refreshed memory." The witness established that the notes would help her refresh her memory of the dates of the events to which she was testifying. Because they were not taken back, there appears to have been error by the manner in which the notes were used. See State v. Dishman, 915 S.W.2d 458 (Tenn.Cr.App. 1995). We believe, however, any error was harmless.

In State v. Elrod, 721 S.W.2d 820 (Tenn.Cr.App. 1986), a State's witness testified and related the substance of his conversation with the defendant. He used the transcripts of the tapes to refresh his recollection. The Court held it is the duty and obligation of the trial judge to control the method and manner of the submission of evidence to the jury, and he has wide latitude and discretion in determining the nature of the evidence which they are to consider. This discretion will not be disturbed in the absence of some indication of abuse.

The propriety, scope, and control of the examination of witnesses rest within the sound discretion of the trial court; and this Court will not interfere with the exercise of this discretion unless it clearly appears upon the face of the record that the trial court abused its discretion when ruling. State v. Pendergrass, 795 S.W.2d 150 (Tenn.Cr.App. 1989).

In this case, we cannot say that the trial judge abused her discretion.

Courts are traditionally given broad discretion in such cases, and witnesses are not held to perfection. A witness may be deemed to testify from memory, hence through present recollection refreshed, if he or she refers to notes for details but remembers the general facts. Cohen et. al. Tennessee Law of Evidence, Sec. 612.1, p.

13

401 (3d ed. 1995), citing <u>U.S. v. Rinke</u>, 778 F.2d 581 (10th Cir. 1985), where a witness referred to notes of telephone calls; <u>Doty v. Elias</u>, 733 F.2d 720 (1984), where witnesses referred to notes of exact dates they worked at a restaurant.

This issue is without merit.

**<u>Defendant's Statements Made After Arrest</u>**

After the defendant was arrested, he was transported to the sheriff's department where a detective asked him if he knew the nature of the allegations against him. The defendant responded "I believe it's about me molesting or raping my daughter."

The defendant acknowledges that he was advised of his <u>Miranda</u> rights prior to making the statement. However, he contends that the statement should have been suppressed, alleging that he was detained an unnecessary length of time before being taken before a magistrate. The defendant was given his <u>Miranda</u> warnings when he was arrested, and was promptly transported to the sheriff's department, where <u>Miranda</u> warnings were again given to the defendant. The defendant signed a waiver form, then made the statements in question. Those statements were made approximately forty-five minutes after his arrest. He then stated he wanted to consult with an attorney, and the questioning ceased. Sometime before 9:00 p.m., the night court commissioner approved the affidavit of complaint prepared by the detective, and an arrest warrant was issued. The defendant was detained no more than two and half hours before a probable cause determination was made as to his arrest.

When a suspect is detained without being taken before a neutral person who explains the process, issues warnings, and assures that constitutional rights are honored, the environment can be intimidating, and often geared to producing in the accused a compulsion to confess. Nevertheless, most courts have not adopted a rule of exclusion, but instead require exclusion of a confession given during a period of unnecessary delay only if an examination of the totality of the circumstances reveals that the statement was not voluntarily given. <u>State v. Huddleston</u>, 924 S.W.2d 666 (Tenn. 1996).

14

A detention is unreasonable if "for the purpose of gathering additional evidence to justify the arrest". County of Riverside v. McLaughlin, 500 U.S. 44, 56; 111 S.Ct. 1661; 114 L.Ed.2d 49 (1991).

In this case there was not a significant delay. The delay was not for the purpose of gathering additional evidence to justify the arrest. The defendant had been arrested based on the allegations of the victim, and the conversation which had been overheard by the law enforcement officers between the victim and the defendant. The defendant was advised of his Miranda rights, and given an opportunity to make a statement. The defendant has made no showing that the detectives purposely delayed obtaining a probable cause determination. There was no unconstitutional or illegal delay. This issue is without merit.

### Cross Examination of the Victim

The defendant alleges that the trial court erroneously precluded inquiry on cross examination of the victim concerning allegations that she made false statements to law enforcement authorities investigating an incident alleged to have occurred when the victim was eight years old, some seven years before the incidents alleged in the indictment.

In a jury out hearing during cross examination of the victim, the defense counsel proposed to asked the victim about the incident, to examine the witness on the issue of credibility. Defense counsel proposed in the jury out hearing to the trial judge that he would desire to cross examine the victim in front of the jury concerning the fact that she was a victim of a crime years before the incidents alleged in this indictment. That crime was investigated and a Mr. Maybee was prosecuted by authorities in Davidson County concerning that crime. The victim made claim that Jason Mays was present during one of the crimes perpetrated on her, and she told law enforcement that Jason Mays had been killed in a plane crash, and that was not true. The court did not allow that line of questioning.

15

Tenn. R. Evid. 608 provides that, absent a showing of necessity to a fair determination of the case, evidence of conduct committed while the witness was a juvenile is generally not admissible. The court may however allow evidence of such conduct of a witness if the court is satisfied that the admission of the evidence is necessary for a fair determination in the proceeding. In this case, the court had a jury out hearing, and determined that the proposed cross examination would not lead to a fair determination in the criminal proceeding. The trial court determined that the risk of delving into allegations of a prior rape by someone else when the victim was only about eight years old out weighed any probative value of a statement she allegedly made to investigators.

The propriety, scope, manner and control of the cross examination of witnesses is a matter within the discretion of the trial judge, which will not be interfered with in absence of an abuse thereof. State v. Pendergrass, 795 S.W.2d 150, 156 (Tenn. Crim. App. 1989). Appellate courts may not disturb discretionary limitations on cross examination absent a clear and plain abuse of discretion. State v. Richardson, 875 S.W.2d 671, 675 (Tenn. Crim. App. 1993), perm. to app. denied. (Tenn. 1994).

We conclude that the trial court did not abuse discretion, and properly refused to allow defense counsel to cross examine the victim about statements she allegedly made during an investigation of a rape when she was eight years old.

**Exhibits to the Jury Room**

The defendant alleges that the trial court erred in permitting the jury to take the transcript of the taped conversation between the defendant and victim into the jury room during deliberations.

Tennessee Rules of Criminal Procedure 30.1 states that the jury shall take to the jury room all exhibits received in evidence for the jury's examination during deliberations, unless good cause is shown for not taking an exhibit to the jury.

The trial court properly instructed the jury to consider the transcript as an aid in understanding the tape, but to listen to the tape itself as the primary evidence. The

16

defendant submits the transcript should not have been taken to the jury room because the tape, and not the transcript, is the evidence in this case. However both were marked as exhibits. The rule requiring exhibits to go back to the jury room is mandatory unless the judge determines that an exhibit should not be submitted to the jury. In this case, the defendant has failed to show that the judge committed error. This issue is without merit.

### Consecutive Sentences

The defendant alleges that the trial court erred by ordering consecutive sentences, and that the defendant received a harsher effective sentence on re-trial, violating due process.

The trial court sentenced the defendant to seven years on each of the twenty-five convictions, with ten of those sentences to be served consecutively, and the remainder concurrently.

At the sentencing hearing, the trial court heard testimony from the victim concerning her hospitalizations, suicide attempts, and drug problems as a result of the continued actions of the defendant.

The trial court determined that the defendant had multiple criminal convictions, and should be sentenced as a Range II offender. Incest is a Class C felony (TENN. CODE ANN. 39-15-302), and the minimum sentence for Range II offender is six years. The trial court found there were no mitigating factors, and that there was an enhancement factor that applied to this case, that the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement. The trial court sentenced the defendant to one year above the minimum sentence for each count.

The trial court then determined that TENN. CODE ANN. 40-35-115(b)(5) applied to this case. That statute provides that consecutive sentencing may be ordered if the defendant is convicted of two or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and the victim, the time span of the defendant's undetected

17

sexual activity, the nature and scope of the sexual acts and extent of the residual, physical and mental damage to the victim.

There was testimony that the defendant began having sexual relations with the victim when she was only ten years old. There had been a few sexual encounters even earlier. The defendant had indicated on the unredacted version of the taped conversation between the defendant and victim that he thought he began having sex with the victim when he got out of prison in 1986, which would make the victim nine years of age. The defendant was convicted of twenty-five statutory offenses involving sexual abuse of his daughter when she was fifteen years of age. The time span of the defendant's undetected sexual activity spanned several years. The nature and scope of the sexual acts covered a wide range of sexual activity, including intercourse, oral sex, anal sex, digital penetration, watching x-rated videos and acting out, requiring the victim to dance, and ripping off her garments. The extent of the residual, physical and mental damage to the victim included attempted suicide more than once, the victim being admitted to Vanderbilt Hospital three times, and the victim developing a heavy drug abuse problem. The victim testified that she did not like herself. She used to love her father, and now she hated him because of what he had done to her.

Because of the aggravating circumstances, TENN. CODE ANN. 40-35-115(b)(5) properly applies as a basis for consecutive sentencing. See State v. Woodcock, 922 S.W.2d 904 (Tenn. Crim App. 1995).

The court is further required to determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) served to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

The defendant is an offender who has a prior record of criminal activity. He was sentenced as a Range II offender. His criminal acts in this case were extensive. The trial court determined that consecutive sentences are reasonably related to the severity of the offenses committed, and were congruent with the general principles of sentencing, and were necessary to protect the public from further criminal conduct by

18

the offender. The defendant persisted in incestuous activities with his adopted daughter after promising to cease those activities. The length of time over which these activities continued evidenced a long term pattern of behavior presenting a risk of future repetition.

The court properly imposed consecutive sentences.

The defendant further alleges that the sentences were more severe on re-trial, and that the imposition of a harsher sentence is unconstitutional, citing North Carolina v. Pearce, 395 U.S. 812, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In Pearce, the United States Supreme Court held that a harsher sentence after a new trial raises a presumption of "judicial vindictiveness," which may be overcome by an affirmative showing on the record of the reasons for the harsher sentence. Id at 725-26; See also State v. Gilliam, 901 S.W.2d 385, 392 (Tenn. 1995).

In resentencing a defendant, the trial court may justify an increased sentence by affirmatively identifying relevant evidence occurring both before and after the original sentencing proceedings. Wasman v. United States, 468 U.S. 559, 569, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984). State v. Coggins, 1995 Tenn. Crim. App. LEXIS 886 (Ct.Crim.App. 1995).

The sentencing judge at re-trial was the same judge who granted post-conviction relief, and ordered the new trial. The record reveals that the trial judge reviewed the transcript of the sentencing hearing in the prior proceedings, and found that the trial court did not address enhancement factors. She considered testimony heard at trial, the pre-sentence report, the testimony heard at sentencing hearing, and determined that there were no mitigating factors but an enhancement factor to apply. The trial judge then enhanced the sentence one year beyond the minimum.

The victim testified at the sentencing hearing on re-trial, but had not testified at the original sentencing hearing. Testimony included the effect the activities had on her which required hospitalization, and which resulted in suicide attempts and drug problems. The defendant began sexual activities on the victim when she was approximately ten years of age, telling her that he needed to show her what real love is. He told her that it was not wrong for him to show her the right way and not the way it

19

had happened with her in the rape.  So he was just going to start showing her how it was supposed to be done in the right way. He began a steady pattern of sexual abuse. As she grew older she realized that he was supposed to be there for her, to keep her safe, but not to have sex with her.  She grew to hate him.  She has required psychiatric treatment.

The pre-sentence report indicates that the defendant was on parole at the time these offenses occurred.

To assure that vindictiveness plays no part, the court in Pearce held that it is presumed that a more severe sentence after re-trial violates due process unless the reasons for imposing the greater sentence affirmatively appear and are based upon objective information in the record. Id at 726.  In Alabama v. Smith, 490 U.S. 794, 104 L.Ed.2d 865, 109 S.Ct. 2201 (1989), the court limited the application of Pearce to those situations in which there is a reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. 490 U.S. at 799. State v. Kendricks, 1995 Tenn. Crim. App. LEXIS 268 (Ct. Crim. App. 1995).  In this case there has been no showing of a reasonable likelihood that the increase in sentence is the product of actual vindictiveness.  There is objective information in the record for imposing the greater sentence on re-trial.  This issue is without merit.

20

We therefore AFFIRM the judgment of the trial court.

_____
JUDGE

CONCUR:

_____

_____

21