# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 6, 2001

## STATE OF TENNESSEE v. LAWRENCE WYATT

**Appeal from the Circuit Court for Madison County**
**No. 99-172     Roger A. Page, Judge**

---

### No. W2000-01672-CCA-R3-CD - Filed March 19, 2001

---

The defendant appeals from his convictions for conspiracy to commit aggravated robbery and facilitation of aggravated robbery. He contends that the evidence is insufficient to support his convictions and that his sentences are excessive. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JERRY L. SMITH, and JOE G. RILEY, JJ., joined.

Pamela J. Drewery (on appeal) and Ramsdale O'DeNeal (at trial), Jackson, Tennessee, for the appellant, Lawrence Wyatt.

Paul G. Summers, Attorney General and Reporter; Laura E. McMullen, Assistant Attorney General; James G. Woodall, District Attorney General; and James W. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Lawrence Wyatt, appeals as of right from his convictions by a Madison County Circuit Court jury for conspiracy to commit aggravated robbery and facilitation of aggravated robbery, Class C felonies. The trial court sentenced the defendant to five years on the conspiracy count and four years on the facilitation count and ordered the sentences to run concurrently. The defendant argues that (1) the evidence is insufficient to support his convictions because the accomplices' testimony was not corroborated and (2) his sentences are excessive because the trial court erred in its application of enhancement and mitigating factors and in its denial of alternative sentencing.

At trial, Ronald James testified as follows: On November 20, 1998, he was working as a clerk at the Econo Lodge on the Highway 45 Bypass in Madison County. The motel's doors were locked, but a window with a tray enabled the clerks to wait on customers who were outside. He was

ending his shift just before midnight when a black male and black female approached the motel's window. The male was around six feet tall, slim, and wearing a stocking over his head. The female, who also had something over her head, said, "This is a robbery. We want your money," and they placed a small pistol on the window's tray. He left the window and told Jerry Replogle, a co-worker, about the robbers. They walked into another office and told the owner about the robbers, and the owner then called the police. The robbers did not take anything from the Econo Lodge and were gone before the police arrived.

Jerry Replogle testified as follows: On November 20 and 21, 1998, he was working at the Econo Lodge on the Highway 45 Bypass. He was relieving Ronald James from his shift around midnight when a black female and black male, who were wearing hoods, approached the motel's window. Mr. James went to the window, and the female said, "Let us in. We've got a gun." At first, he thought the people at the window were playing a prank, but then Mr. James left the window area and told him that the people had a gun. He then saw that the man was pointing a small .22 or .25 caliber automatic gun at the security camera. He and Mr. James went into a back room and told the manager about the robbers, and the manager called the police. The robbers did not take anything and left before the police arrived.

Mr. Replogle identified the defendant as the perpetrator by the defendant's eyes, but he admitted that the defendant looked smaller than the man who had attempted to rob the motel. He stated that during the attempted robbery, he only saw the defendant for three or four seconds, that the defendant had on a heavy coat, and that he was not able to determine the defendant's build at that time.

Marquay Williamson testified as follows: On November 21, 1998, she was working as a cashier at Jerry's Oil Citgo on Hollywood Avenue. Around 1:00 a.m., when a co-worker was outside and nobody was in the store, a black female and black male came into the store. The female was short, and the male was "really big and had a lot of hair." The man pointed a small, black .22 or .25 caliber gun at her, and the woman demanded the money from the cash register. She gave the woman the cash register's drawer, which contained over five hundred dollars. The robbers left in a maroon, four-door car that had "rails." She could see that there were other people in the car but could not see them well enough to describe them.

Ms. Williamson testified that she knew Carmella Poole, a co-defendant, and that Ms. Poole came into the store around 11:00 p.m. that evening. She stated that Ms. Poole bought a beer and then left and that she did not see Ms. Poole again that night.

Officer Edward McMullen of the Jackson Police Department testified as follows: On November 21, 1998, at 12:05 a.m., he was dispatched to the Econo Lodge. Two clerks gave him a vague description of the robbers but a good description of the car the robbers used. He then placed a be-on-the-lookout (BOLO) call. About one hour later, a BOLO call from Jerry's Oil Citgo described the same car, a maroon Grand Am with a luggage rack on the trunk. About five minutes later, he spotted a car that matched the description. He followed the car until backup arrived and

then stopped the car. Four people were in the car – a black female in the driver's seat, a black male in the front passenger seat, a black female in the driver-side backseat, and a black male in the passenger-side backseat.

Officer McMullen identified the defendant as the male in the backseat and said that a cash drawer was on the rear floorboard between the defendant's feet. About five hundred forty dollars and a wig were recovered from the drawer. Also, a small, grayish .25 caliber gun was recovered from underneath the drawer. A stocking cap was recovered from Sharon Chism, the female driver, and a stocking was recovered at booking from the defendant.

On cross-examination, Officer McMullen admitted that the clerks from Econo Lodge were unable to give a good physical description of the robbers. He also stated that the male in the front seat of the car was large framed and that one of the males had on a heavy coat, but he could not remember which one. He admitted that he touched the gun and the cash drawer with his bare hands and that fingerprint analysis was not ordered on either piece of evidence.

Sergeant Belinda Coleman of the Jackson Police Department testified as follows: On November 21, 1998, she was dispatched as the crime scene technician for the defendant's case. A cash register drawer, which contained about five hundred dollars and a wig, was recovered from the passenger-side rear floorboard of the burgundy, Pontiac Grand AM, and a .25 caliber automatic pistol was found underneath the drawer. On cross-examination, she testified that she did not remember what the suspects were wearing that night.

Sharon Chism testified as follows: She pled guilty to the November 21, 1998 attempted aggravated robbery of the Econo Lodge and the aggravated robbery of Jerry's Oil and was serving an eight-year sentence, which the state had recommended in return for her cooperation and truthful testimony. On the night in question, she was with Xavier Chism, who was her brother, Carmella Poole, and the defendant. Earlier in the evening, she and the defendant discussed robbing some stores, and the defendant said that he was willing. She drove the defendant's burgundy Grand AM to the Econo Lodge, where she and the defendant, wearing stocking caps, approached the motel's window. The defendant had a small .25 automatic pistol, which she had given to him earlier in the evening, and he demanded money from the clerks. The clerks ran to a back room, at which point, they left, fearing the police would be there soon. Ms. Poole and Mr. Chism stayed in the car and did not know what she and the defendant were doing.

Ms. Chism testified that she then drove to Jerry's Oil on Hollywood to determine whether they could rob it. Ms. Poole knew that they were going to rob the store but did not agree to participate, except to go into the store to see if anybody was inside. When Ms. Poole returned to the car, another customer arrived, resulting in their leaving. They drove to another Jerry's Oil to see if they could rob it but determined that the employees were watching them too closely. They then returned to the Jerry's Oil on Hollywood, and she and the defendant went into the store wearing stockings over their heads. While she demanded the money, the defendant pointed the .25 automatic pistol at the cashier. The cashier gave her the drawer, and they left. When they were in the car, she

gave the drawer to the defendant, who was in the passenger-side backseat, and told him to count the money. Shortly thereafter, the police stopped them and arrested them.

On cross-examination, Ms. Chism stated that her brother was about six feet, two inches tall. She denied that her brother, not the defendant, went with her to rob the Econo Lodge and Jerry's Oil.

Carmella Poole, who was a co-defendant at the beginning of the trial but pled guilty before her testimony, testified as follows: She pled guilty to facilitating aggravated robbery and was sentenced to seven years on intensive probation. She had agreed to cooperate with the state and testify truthfully. On November 21, 1998, she went to the Econo Lodge with Sharon Chism, Xavier Chism, and the defendant. Ms. Chism and the defendant went into the motel, and she and Mr. Chism stayed in the car. Ms. Chism wore a stocking over her face and had a small handgun, although she admitted that in a prior statement, she had said that Ms. Chism gave the gun to the defendant. One to two minutes later, Ms. Chism and the defendant returned. They drove to Jerry's Oil, where she went inside and bought a beer. They left Jerry's Oil but returned about an hour and a half later. Ms. Chism, who was wearing a hat, and the defendant went into the store and returned to the car with a cash register drawer. Ms. Chism drove and the defendant sat in the passenger-side backseat. On cross-examination, Ms. Poole stated that Xavier Chism, who was wearing a large, black leather coat, did not get out of the car at either the Econo Lodge or Jerry's Oil.

Investigator Jerald Golden of the Jackson Police Department testified that during his investigation of the attempted robbery and robbery, the defendant made the following statement:

> On 11/20/98, I went over to Xavier Chism's house on North Hayes across from the Super Valu Store. This was ten-thirty p.m. or eleven p.m.
>
> When I got there Xavier Chism, Sharon Chism, and some other black female was there. We all got into my mother's 1991 Grand AM and went riding around.
>
> Sharon was driving the car and she drove to the Econo Lodge on the 45 Bypass. Sharon and me got out of the car, went to the motel. I had a hood over my face and Sharon had some type of mask over her face. I had a pistol and when we went in Sharon had gave the pistol to me.
>
> There was two white males in the office area. Sharon tried to put the gun under the window but it wouldn't go under it. The men then ran into the back room and we ran out of the motel to the car and left. We didn't get anything from the motel.
>
> We went to Jerry's Oil Company on Hollywood. Sharon was driving. I got out with Sharon and went into a store. I was wearing blue jeans, a black shirt, a black velvet coat. Sharon was wearing some type of mask.
>
> When we got into the store, Sharon said something to the black female that was behind the counter. I had a gun in my hand. The lady gave Sharon the cash register drawer and we left the store and got back into my mother's Pontiac Grand AM and left.

Sharon was driving. Xavier and another black female was in the car looking out for us. It was Sharon's idea to do these robberies. The police stopped us on Hollywood near the graveyard. The gun belonged to Sharon.

Investigator Golden said that he reduced the statement to writing after the defendant told him what had happened. The defendant then read the statement, initialed each paragraph, and signed at the bottom.

The defendant testified that he had planned to go out with Xavier Chism but that when he went to get him, Sharon Chism asked if she and one of her friends could join them. He said that he let Ms. Chism drive because he had taken cold medication. He stated that he fell asleep and that when he awoke, Ms. Chism and Mr. Chism were coming out of the Econo Lodge. He said that he got out of the car, and Ms. Chism handed him a gun, but he dropped it. He said that Ms. Chism picked up the gun and they left. He testified that they went to Jerry's Oil on Highway 70 but left and went to Jerry's Oil on Hollywood, where Ms. Chism's friend bought a beer. He said that they left that store and drove around for about an hour, during which time he fell asleep. He stated that when he awoke, they were at Jerry's Oil on Hollywood and he went inside the store. He said that he saw Ms. Chism in the store with a gun and Mr. Chism standing at the door. He testified that he returned to the car and that when Ms. Chism got in the car, she handed him a cash register drawer and a pistol, both of which he threw under the seat.

The defendant said that Xavier Chism was a little taller than he and weighed about two hundred fifteen pounds. He stated that Mr. Chism was wearing black jeans, a dress shirt, a sweater, and a long fluffy scarf. He said that he was wearing blue jeans and a black shirt but not a coat. He testified that he never discussed and did not know that Ms. Chism planned to rob stores that night. He said that the statement read by Investigator Golden was not what he had said nor was it what he had read and signed. He admitted that the initials and signature on the statement were his.

Investigator Golden was recalled and testified that the statement which he read into evidence was not forged and that he watched the defendant initial and sign the statement. He admitted that no other officers were present during the interview and that he did not record the interview.

Based upon the foregoing evidence, the jury convicted the defendant of conspiracy to commit aggravated robbery of Jerry's Oil and of facilitating the aggravated robbery of Jerry's Oil. The jury found the defendant not guilty on the counts for attempted aggravated robbery of the Econo Lodge and for conspiracy to commit aggravated robbery of the Econo Lodge.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his convictions, arguing that his convictions were based upon the uncorroborated testimony of his accomplices. The state argues that the accomplices' testimony was sufficiently corroborated. We agree.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

The robbery in this case was aggravated because it was accomplished with a deadly weapon. See Tenn. Code Ann. § 39-13-402(1). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). Conspiracy is committed "if two (2) or more people, each having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which constitutes such offense." Tenn. Code Ann. § 39-12-103(a). Finally, "[a] person is criminally responsible for facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a).

It is well settled in Tennessee that a conviction may not be based upon the uncorroborated testimony of an accomplice. See State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994) (citations omitted). To corroborate the testimony of an accomplice,

> there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.

Hawkins v. State, 4 Tenn. Crim. App. 121, 133, 469 S.W.2d 515, 520 (1971) (citations omitted). Whether an accomplice's testimony is sufficiently corroborated is a matter entrusted to the jury. Stanley v. State, 189 Tenn. 110, 117-18, 222 S.W.2d 384, 387 (1949).

The evidence viewed in the light most favorable to the state reveals, through the accomplices' testimony, that the defendant and Sharon Chism talked about robbing stores before they went out for the evening with Xavier Chism and Carmella Poole in the defendant's maroon, Pontiac Grand AM. The defendant and Ms. Chism went to the Econo Lodge. The defendant was wearing a stocking on his head, had a .25 caliber automatic pistol that Ms. Chism had given him, and demanded money. After the robbery failed, they drove to Jerry's Oil on Hollywood, where Ms. Poole entered the store to buy beer and to see if anybody was in the store. When another customer arrived, they left the store and went to another Jerry's Oil to see if they could rob it. They determined that they could not, and they returned to the Jerry's Oil on Hollywood. Then Ms. Chism and the defendant entered the store, and Ms. Chism demanded money while the defendant pointed a gun at the cashier. The cashier gave Ms. Chism the cash register drawer, and they left. Ms. Chism, who was driving, gave the defendant, who was in the backseat on the passenger-side, the drawer to count the money. The police apprehended them a short time later.

This testimony was sufficiently corroborated by the testimony of other witnesses. First, this testimony is substantially corroborated by the defendant's statement that was introduced through Investigator Golden. Further, Officer McMullen and Sergeant Coleman testified that the cash register drawer and a .25 caliber automatic pistol were recovered from the rear passenger-side floorboard, directly below where the defendant was sitting in the car. Also, Officer McMullen testified that a stocking was recovered from the defendant's person at booking. Finally, the testimony of Ronald James and Jerry Replogle corroborated the accomplices' version of the attempted robbery of the Econo Lodge, and the testimony of Marquay Williamson corroborated the accomplices' version of the robbery of Jerry's Oil. The defendant's contention that the accomplices' testimony was not corroborated is without merit.

A rational jury could have found beyond a reasonable doubt that the parties conspired to rob business establishments on the night of the offenses. Likewise, it could have found that the defendant, knowing that Ms. Chism intended to commit the aggravated robbery, knowingly furnished substantial assistance to that end.

## II. SENTENCING

The defendant contends that the trial court erred in its application of enhancement and mitigating factors and in its denial of alternative sentencing. The state argues that the trial court properly sentenced the defendant. We agree with the state.

At the sentencing hearing, Jane Kirby of the Department of Children's Services testified that she served as the defendant's case manager after the defendant was adjudicated delinquent for aggravated kidnapping, aggravated robbery, and aggravated burglary. She stated that the defendant was sent to a juvenile facility to serve two years but that he was released about six months early because he earned sentence reduction credits for his good behavior.

Kvochun Hou, the victim of the defendant's juvenile offenses, testified that on the day in question, he answered his door, and the perpetrators, who had a weapon, forced him into his bathroom. He stated that he heard noises from other areas of the house and then the perpetrators took him outside, placed him in the trunk of his car, and drove to a field, where they left him. When he returned to his house, money and jewelry were missing. He said that he was seventy-nine years old when this occurred.

Marioni Lawrence, a juvenile probation officer, testified that she was assigned the defendant's juvenile case. She stated that the defendant was remorseful and that the defendant seemed like a follower who could be easily influenced.

Bobbie Jean Boyd, the defendant's mother, testified that if the defendant were released, he could live with her. Also, she stated that she would make sure that the defendant complied with the terms of his probation. She admitted that the defendant's present offenses were committed just two months after his release from the juvenile facility.

The defendant testified that on the night of the offenses, he had planned to go out with some old friends. He said that he did not know Ms. Chism or Ms. Poole and that he did not have anything to do with the robberies. He stated that it was bad judgment on his part to trust people whom he did not know and that he should not have allowed Ms. Chism to drive his mother's car. He stated that the police officers and his accomplices lied at trial. He admitted to his participation in his juvenile offenses. The defendant further testified that he was nineteen years old, had obtained his GED, and planned to attend college. He stated that if he were released, he would comply with all the terms of his probation.

The trial court found four enhancement factors applicable to the conspiracy count – that the defendant has a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range, that the defendant possessed a firearm during the commission of the offense, that the defendant had no hesitation about committing a crime when the risk to human life was high, and that the defendant was adjudicated to have committed delinquent acts that would have been felonies if committed by an adult. See Tenn. Code Ann. § 40-35-114(1), (9), (10), (20). The trial court found that enhancement factors (1), (10), and (20) applied to the facilitation count. The trial court found that no mitigating factors applied. The trial court then sentenced the defendant to five years on the conspiracy count and four years on the facilitation count and ordered the sentences to run concurrently. Finally, the trial court denied probation, finding that confinement was necessary to avoid depreciating the seriousness of the offenses. See Tenn. Code Ann. 40-35-103(1)(B). The trial court commented that robberies were a serious problem in the community.

When a defendant appeals the length, range, or manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166,

169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appealing party. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the sentence is purely de novo. Ashby, 823 S.W.2d at 169.

The defendant was sentenced as a Range I, standard offender, for which the applicable range for a Class C felony is three to six years. Tenn. Code Ann. § 40-35-112(a)(3). The presumptive sentence for a Class C felony is the minimum in the range when no enhancement or mitigating factors are present. Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and then reduce the sentence as appropriate for any mitigating factors. Tenn. Code Ann. § 40-35-210(e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; Ashby, 823 S.W.2d at 169.

The defendant asserts that the trial court erred in its application of enhancement and mitigating factors. However, the defendant does not make any argument as to how the trial court erred. It is not a function of this court to rummage through the record to glean support for a defendant's summary assertions. See T.R.A.P. 27(a)(7). In any event, we cannot say from a review of the record that the trial court abused its discretion in weighing the enhancement factors to increase the defendant's sentences for conspiracy to five years and for facilitation to four years.

The defendant also asserts that the trial court erred in denying him probation. Again, the defendant does not make any argument as to how the trial court erred. However, we recognize that the trial court's cryptic recital of its findings indicates that confinement was based upon the mere fact that a robbery occurred, an inadequate reason for denying probation. Nevertheless, probation was properly denied in light of the facts that the defendant was adjudicated delinquent for aggravated kidnapping, aggravated robbery, and aggravated burglary and that the defendant committed the present offenses just two months after his release from a juvenile facility. Such does not bode well for his rehabilitation potential. Confinement may impress upon him the seriousness of his misconduct. We do not believe that the defendant has carried his burden of showing that the sentences are improper.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE

-9-