# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE

Assigned on Briefs at Knoxville March 26, 2014

## STATE OF TENNESSEE v. JOHN JACKSON

**Appeal from the Circuit Court for Montgomery County**
**No. 41100157     Michael R. Jones, Judge**

---

**No. M2013-00969-CCA-R3-CD - Filed May 16, 2014**

---

John Jackson ("the Defendant") was convicted by a jury of two counts of facilitation of aggravated robbery, one count of aggravated sexual battery, one count of aggravated burglary, and one count of facilitation of theft over $500. The trial court sentenced the Defendant to an effective term of twenty years' incarceration, to be served at 100%. In this direct appeal, the Defendant contends that the trial court erred in denying his pre-trial motion to suppress; erred in failing to determine whether the Defendant's prior convictions were admissible; erred in failing to grant a continuance after finding error in the State's notice of intent to seek enhanced punishment; erred in failing to instruct the jury on theft as a lesser-included offense of aggravated robbery; that the evidence was not sufficient to support his conviction of aggravated sexual battery; that the trial court failed to act as thirteenth juror; and that he should not have been sentenced as a Range III offender. Upon our thorough review of the record and applicable law, we affirm the trial court's judgments.

## Tenn. R. App. P. 3 Appeal as of Right;
## Judgments of the Circuit Court Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

Chase T. Smith (on appeal) and James Potter (at trial), Clarksville, Tennessee, for the appellant, John Jackson.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel; John W. Carney, District Attorney General; and Lee Willoughby, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

The Defendant was charged with two counts of aggravated robbery, one count of aggravated burglary, one count of theft over $500, and two counts of aggravated sexual battery. All of these offenses were alleged to have been committed with co-defendants Dimetrius Ford and Marquan Hudson on or about September 27, 2010. At the Defendant's jury trial,[1] held on August 27 and 28, 2012, the following proof was adduced:

Katie Manor testified that she was living in Shannon Woods Apartments in Clarksville, Tennessee, on September 27, 2010. Xavier Brown was her roommate. On the day in question, she left work at 3:00 a.m. and went home. She and Brown watched a movie. At about 6:00 a.m., they began watching a second movie. At approximately 6:15 a.m., Manor heard the door handle jiggle. When she looked up, she saw that the door was open, and three men were standing there. Two of the men were armed and masked. The third man was not masked.

The three men entered the apartment without consent. They began screaming and pointing their guns at Manor and Brown, telling them to get up. The men were yelling about drugs. According to Manor, one of the masked men went into her bedroom and bathroom and began "searching and ransacking." The unmasked man was looking through the cabinets and closet in the living room, and the other masked man was talking to Manor. The men made Brown get on his knees, and they made both Brown and Manor close their eyes. The men also made both victims strip to their underwear. One of the men held a gun to the back of Brown's head. Another assailant said, "Don't shoot that guy."

The masked man that was speaking to Manor asked her about her fiancé. She testified that, "at first," this person was "kind of just trying to be nice." Then, he told her to take off the rest of her clothes. When she had done so, he told her "that if this was a different situation or under different circumstances, he would try to talk to [her], that he liked [her] tattoos." Manor testified that the man "rubbed his gun on" her tattoos and then he "smacked [her] butt." Manor clarified that he rubbed his gun across her chest. She added that these actions made her feel as if she had been raped.

When the second masked man returned from the back of the apartment, he asked the others what they were doing. Manor asked him if she could put her clothes back on, and he said yes. As the men were leaving the apartment, they took Manor's phone apart and "threw

---

[1] The Defendant was tried alone.

-2-

it all in different places," warning her not to call the police. One of the men then noticed Manor's engagement ring. He asked her to take it off, which she did, and she began to cry. He put the ring back on her finger and said, "I wouldn't do that to you." One of the other men then came up, put a gun to her head, and took her ring, saying, "I'll do that to you."[2] The men also took an X-Box, a PlayStation, her laptop computer, CDs, and DVDs.

After the men left, Manor went to her father's house. Her sister called the police.

Some weeks later, Manor was doing her laundry at the apartment complex's facilities. The Defendant approached her and began talking to her. He asked if her fiancé was home. She became uncomfortable because she did not recall having any previous conversation with him. On another occasion, a friend of hers was at her apartment and asked if one of his friends could join them. She said yes, and the Defendant came over. She remembered him from the laundry facilities. They had a conversation, and she recounted the robbery. The Defendant began explaining that his brother, Demetrius,[3] had been involved in the robbery. At the same time, the Defendant was blaming the robbery on "Flint." The Defendant did not implicate himself in the robbery. During this same conversation at Manor's apartment, the Defendant asked to see her phone. When she expressed reluctance, he asked if she was afraid that he was going to look at her pictures. When she answered affirmatively, the Defendant said, "I wouldn't do that to you." She testified that she then thought, "[T]hat sounds familiar."

On cross-examination, Manor stated that, at one point, the unmasked man put a gun in her face, but she did not know if it was a third gun or if he had gotten the gun from one of the masked men. She also stated that the men indicated that they were there because of Brown and that they were not there for her. She explained that Brown had been her roommate for two to three weeks at that point.

Manor acknowledged that she misidentified three suspects from photographic arrays about one week after the assault. She acknowledged that she never identified the Defendant from a photographic array. She stated that it was about two months after the attack that she saw the Defendant in the laundry facilities and that she "most definitely didn't recognize him." She acknowledged that she did not know which man took her property, but she saw them leaving with a duffle bag. She clarified that one of her tattoos was on her breast, and the other one was on her hip. She also said, "The nice guy had dreadlocks at the time."

---

[2] Manor testified that she later recovered her engagement ring from the police.

[3] We acknowledge the different spellings of this name that appear in the record.

On re-direct examination, Manor acknowledged that she initially was dishonest with the police about Brown's presence at her apartment because he told her that he was in trouble. She kicked him out of the apartment "[r]ight after it all happened." She clarified that the Defendant was not pictured in the three photographic arrays in which she circled other suspects. She also clarified that she never identified with certainty any of the people she circled. On a fourth photographic array, she identified co-defendant Dimetrius Ford with a notation that she was "80% sure."

Xavier Brown testified that he stayed with Manor at her apartment for three or four months. He was planning on moving to Alaska and intended to finance his move through selling marijuana. To this end, he had asked some people around the apartment complex about where he could purchase the marijuana.

At about 6:00 a.m. on September 27, 2010, he was watching a movie with Manor. They were both sitting on the couch. He heard the doorknob jiggle, and then the door flew open and three men entered the apartment. Two of the men were masked. The third man "grabbed his shirt and was covering his mouth with it." One of the masked men had dreadlocks, and he had a gun. One of the other men also had a gun. The man with the dreadlocks put his gun to Brown's head and asked, "Where's the green at? Where's the money?" Brown understood "green" to be a reference to marijuana. The man made him and Manor get up and empty their pockets and take off their outer clothing. Brown took his wallet and phone out of his pockets, and these items were taken.

Brown told the men that he did not know what they were talking about, and they started going through the apartment. One of the men kept him and Manor under surveillance, one of the men went to the back of the apartment, and the third man was in the kitchen. Brown was turned into a corner, limiting his ability to see what was happening. He did not know if the man in the kitchen was masked or not. Later, the man with the dreadlocks put Brown on the floor, pulled Brown's hoodie over him, and hit him in the back of the head with the butt of his gun. Brown heard the other two men tell the man with the dreadlocks not to shoot Brown.

Brown later identified a photograph of the Defendant as the man with the dreadlocks.

On cross-examination, Brown admitted that he misidentified another suspect from another photographic array. He also admitted that he was untruthful in his written statement to the police. He admitted to previous charges of assault and aggravated burglary. He admitted that he currently was on probation. He acknowledged that he knew that selling half of a pound of marijuana was a felony. He stated that the men made him and Manor disrobe in order to make sure they were unarmed.

-4-

Co-defendant Marquan Hudson testified that he participated in the instant crimes with the Defendant and Ford. He stated that the robbery was the Defendant's and Ford's idea and that those two men had handguns, but he did not. Ford drove them in Hudson's girlfriend's truck. The Defendant and Ford covered their faces but Hudson did not. He heard the other two men talking about getting "some weed." He did not know their destination, however.

When they got to the apartment at Shannon Woods, all three men got out of the truck. Hudson tried to cover his face by pulling his shirt up. They walked up to the apartment and found the door unlocked, so they went inside. They saw a man and a woman in the apartment. Hudson gathered some DVDs, video games, and CDs and put them in a bag. He stated that, initially, he went into the back of the apartment with Ford but then returned to the living room when he heard some commotion. He saw that Brown was wearing nothing but his underwear and Manor was naked. The Defendant was with them. He stated that he "tr[ied] to stop [the Defendant] from doing all the extra curricular activities." He told the Defendant not to shoot Brown. The Defendant walked over to Manor and rubbed his gun on her breasts and "butt." The Defendant was laughing. When Ford returned to the front of the apartment, Ford told the victims to put their clothes back on. Ford noticed Manor's engagement ring. Initially, Ford took the ring but then gave it back to Manor. Hudson "ended up taking the ring."

Hudson stated that they left the apartment with the bag containing the items that he gathered. They returned to Ford's house. Hudson stated that he did not get any of the property that they took, but he acknowledged using a cell phone that they got from the apartment. He pleaded guilty to two counts of robbery in this case, and he agreed to testify against the Defendant as part of his plea agreement.

On cross-examination, Hudson reiterated that there were only two guns used during the offenses.

Angelica Espinoza testified that she was dating Hudson in September 2010. On the night of September 26, 2010, she drove herself to a party at an apartment complex on Airport Road. At the party were Hudson, Ford, and several other people. The Defendant arrived after she did. She went to bed there at about 2:30 a.m. and awoke at about 6:30 or 7:00 a.m. She and another woman were the only people still in the apartment. Hudson had taken her vehicle at about the same time she went to bed, telling her that Ford was going with him. After she woke up, she saw her vehicle pull up. Ford was driving it, and with him were Hudson and the Defendant.

Detective Eric Ewing of the Clarksville Police Department testified that he was the lead investigator on this matter. After he developed the Defendant as a suspect, he interviewed the Defendant. After being advised of his rights, the Defendant agreed to give

a statement. Initially, the Defendant told Det. Ewing that Conway Lowder, nicknamed "Twenty Two," told him about having committed the crimes at Manor's apartment with Ford and Hudson, nicknamed "Flint." Because of the amount of detail that the Defendant related to Det. Ewing about the crimes, Det. Ewing told the Defendant that he did not believe that the Defendant's knowledge was second-hand.

The Defendant then admitted to having been with Ford and Hudson during the crimes. The Defendant gave two written statements that were admitted into evidence. In these written statements, the Defendant claimed that the attack was Hudson's idea and that, when Hudson talked Ford into participating, the Defendant went along to protect Ford, the Defendant's "little brother." When the three men entered the apartment, the Defendant went to the back and searched the bedroom closet. He heard Hudson telling the victims to strip. When the Defendant returned to the living room, Ford went into the bedroom. As the Defendant was searching the kitchen, he heard Hudson say, "get naked." When the Defendant looked, he saw "the girl is naked." Ford returned and told Manor to put her clothes on, and the Defendant returned to the bedroom. The Defendant denied seeing anyone touch Manor in a "sexual manner," explaining that he "was facing the kitchen area when [Hudson] made her strip." The Defendant also stated that he was unarmed during the attack and that the only thing he took were some DVDs.

Det. Ewing stated that he recovered Manor's engagement ring from Ford's attorney. The remainder of the stolen property was not recovered.

On cross-examination, Det. Ewing acknowledged that there was no physical evidence connecting the Defendant to these crimes. He acknowledged that, initially, both victims provided some false information. Also, when he first spoke with Hudson, Hudson denied being involved. After Hudson was arrested, Hudson claimed to have been pressured into participating.

The State rested its case-in-chief after Det. Ewing's testimony and dismissed the second charge of aggravated sexual battery. The Defendant waived his right to testify, and the defense presented no witnesses.

Based upon this proof, the jury found the Defendant guilty of two counts of facilitation of aggravated robbery, one count of aggravated burglary, one count of facilitation of theft over $500, and one count of aggravated sexual battery. On September 28, 2012, the Defendant filed a motion for judgment of acquittal on his aggravated sexual battery conviction. On October 5, 2012, the trial court conducted a sentencing hearing and denied the Defendant's motion for judgment of acquittal. The trial court sentenced the Defendant as a Range III persistent offender to fifteen years for each of the facilitation of aggravated robbery offenses, to fifteen years for the aggravated burglary, to eleven months and twenty-

nine days for the facilitation of theft, and to twenty years for the aggravated sexual battery. The trial court ordered these sentences to be served in prison, concurrently to each other but consecutively to previous sentences. The judgment orders were entered and filed on October 5, 2012. The Defendant filed a notice of appeal on November 5, 2012. The Defendant filed a motion for new trial on November 14, 2012. The trial court held a hearing on the Defendant's motion for new trial on March 28, 2013, and subsequently denied it.

In this direct appeal, the Defendant contends that the trial court erred in denying his pre-trial motion to suppress; erred in failing to determine whether the Defendant's prior convictions were admissible for impeachment purposes; erred in not continuing the trial after determining that the State's notice of intent to seek an enhanced sentence mischaracterized the Defendant as a career offender; erred in failing to instruct the jury on theft as a lesser-included offense of aggravated robbery; that the evidence was not sufficient to support his conviction of aggravated sexual battery; that the trial court failed to act as thirteenth juror; and that he should not have been sentenced as a Range III offender. The State contends that all of these issues except the sufficiency of the evidence and sentencing have been waived because the Defendant did not file timely his motion for new trial. We will address the State's contention first.

## Analysis

### *Timeliness of Motion for New Trial*

The judgments of conviction in this matter were entered and filed on October 5, 2012. The Defendant's motion for new trial was filed on November 14, 2012, more than thirty days later. Our Rules of Criminal Procedure provide that a motion for new trial must be filed "within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). "[T]his thirty-day period is jurisdictional and cannot be expanded." State v. Hatcher, 310 S.W.3d 788, 800 (Tenn. 2010); see also Tenn. R. Crim. P. 45(b)(3). Because the thirty-day period is jurisdictional, the trial court lacks jurisdiction "to hear and determine the merits of a motion for a new trial which has not been timely filed." State v. Bough, 152 S.W.3d 453, 460 (Tenn. 2004). An untimely motion for new trial results in the waiver of all issues raised therein other than sufficiency of the evidence and sentencing. Id.; see also Tenn. R. App. P. 3(e). This Court does not have the authority to waive the untimely filing of a motion for new trial. State v. Stephens, 264 S.W.3d 719, 728 (Tenn. Crim. App. 2007) (citing State v. Givhan, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980)).[4]

---

[4] Although the Defendant has waived the majority of his issues due to his failure to file a timely motion for new trial, we may consider any of them that rise to the level of "plain error." See Tenn. R. App. P. 36(b); Hatcher, 310 S.W.3d at 808. For this Court to conclude that plain error occurred, five prerequisites
(continued...)

The Defendant challenges the sufficiency of the evidence only as to his conviction of aggravated sexual battery. As charged in this case, aggravated sexual battery is the "unlawful sexual contact with a victim by the defendant" and "[f]orce or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon." Tenn. Code Ann. § 39-13-504(a)(1) (2010). "'Sexual contact' includes the intentional touching of the victim's . . . intimate parts . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Id. § 39-13-501(6) (2010). "'Intimate parts' includes the . . . buttock or breast of a human being." Id. § 39-13-501(2). The Defendant contends that the evidence was not sufficient to establish his identity as the perpetrator of this offense against Manor, arguing that Hudson's testimony was not sufficiently corroborated on this point.

Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The appellate court does not weigh the evidence anew; rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts

---

[4](...continued)
must be satisfied:

> "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused [must not have] waive[d] the issue for tactical reasons; and (e) consideration of the error [must be] 'necessary to do substantial justice.'"

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). If any one of these factors is not satisfied, we need not consider the remaining factors. Id. at 283.

based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our supreme court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

Hudson testified to his involvement in these offenses during the Defendant's trial and also was charged with these crimes. Hudson, therefore, was an accomplice as a matter of law. See State v. Robinson, 146 S.W.3d 469, 489 (Tenn. 2004). In Tennessee, a defendant cannot be convicted solely on the uncorroborated testimony of an accomplice. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001) (citing State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); Monts v. State, 379 S.W.2d 34, 43 (Tenn. 1964)[5]). Rather,

> "[T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration."

Bigbee, 885 S.W.2d at 803 (quoting State v. Gaylor, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992)). It is for the jury to determine whether sufficient corroboration exists. Id. at 804 (citing Stanley v. State, 222 S.W.2d 384, 386 (Tenn. 1949)).

Hudson testified that the Defendant and Ford wore masks during the offenses but that he did not. Hudson also testified that the Defendant touched Manor on her breast and buttocks with a gun. The Defendant stated to law enforcement that he and Ford wore masks and that Hudson did not. Brown testified that one of the two masked men wore dreadlocks. Brown identified the Defendant from a photographic array as the assailant with the

---

[5] Monts has since been overruled on other grounds. See State v. Collier, 411 S.W.3d 886, 899 (Tenn. 2013).

dreadlocks. Thus, the proof was sufficient to establish that the Defendant was the masked man who wore dreadlocks.

Manor testified that, after she and Brown had been ordered to strip down to their underwear, one of the masked men began speaking with her about her fiancé. He was, she said, "kind of just trying to be nice." He then told her to take the rest of her clothes off. She continued: "He then told me that if this was a different situation or under different circumstances, he would try to talk to me, that he liked my tattoos and he rubbed his gun on them and then he smacked my butt." Manor testified on cross-examination that "[t]he nice guy had dreadlocks at the time."

We hold that this proof was sufficient for a reasonable jury to find that the Defendant was the masked assailant who committed the aggravated sexual battery against Manor. Brown identified the Defendant as the masked man who wore dreadlocks. Manor described her sexual assailant as initially "just trying to be nice." During cross-examination, Manor clarified that the "nice guy had dreadlocks." Although this corroborative proof of the Defendant's identity as the perpetrator of the aggravated sexual battery was not overwhelming, it need not be.[6] We emphasize that "[t]he corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration." Bigbee, 885 S.W.2d at 803.

The jury determined that there was sufficient corroboration of the Defendant's identity as the perpetrator of the aggravated sexual battery, and we hold that the proof was sufficient to support the jury's determination. Accordingly, the Defendant is entitled to no relief on this basis.

*Motion to Suppress*

Prior to trial, the Defendant filed a motion to suppress all but the first statement he gave to Det. Ewing on the basis that his subsequent statements "were made only after promises of leniency and favoritism towards the Defendant if he cooperated with Detective Ewing and implicated himself in a crime." Because the Defendant's statements were audio-recorded, the trial court ruled on the Defendant's motion after listening to the recording

---

[6] In its brief, the State refers to "Supp. Ex. 1, pg. 131" as setting forth additional corroborative proof. However, this document, a partial transcript of another statement made by the Defendant, was not admitted into evidence at the trial. This document was admitted only in conjunction with the Defendant's motion to suppress.

specified by the Defendant and reading a transcript thereof.[7]  The trial court then issued a written order denying the motion, stating the following:

> Throughout the transcript and DVD, the defendant is the one doing 90(%) per cent of the talking.  He is trying to convince the investigator to make a deal for misdemeanor theft and criminal trespass.  When this did not work, the defendant offered to help on another case by finding out information from a cell mate.  When this did not work, the defendant tried to get the investigator not to file any charges until he had made bond.  Sprinkling through these words of the defendant are admissions against interest.  The defendant placed himself there, he observed others doing certain criminal acts and he left with stolen merchandise.
>
> Based on the reading of the transcript and viewing the DVD, the court is convinced that the defendant voluntarily provided the information.  No promises were made to the defendant.

We hold that this issue is waived because it was not included in a timely motion for new trial.  Moreover, the Defendant has not established that he is entitled to plain error relief on this issue.  The proof adduced at trial was sufficient to support the Defendant's convictions of aggravated sexual battery, facilitation of aggravated robbery,[8] aggravated burglary,[9] and facilitation of theft over $500,[10] even absent his statement.  Hudson testified about the Defendant's participation in these crimes.  Brown identified the Defendant as one of the assailants.  Manor's testimony was sufficient to corroborate Hudson's testimony that the Defendant committed the aggravated sexual battery.  Espinoza corroborated Hudson's testimony about the use of her vehicle for the commission of the crimes and the Defendant's presence in the vehicle after the crimes.  Indeed, the Defendant does not challenge the sufficiency of the evidence underlying his convictions of the non-sexual offenses.  Because the proof was sufficient to support the Defendant's convictions even without his statement, any error by the trial court in denying his motion to suppress did not adversely affect a substantial right and recognition of the alleged error is not necessary to do substantial justice.  Accordingly, the Defendant is not entitled to relief on this issue.

---

[7] The record on appeal does not contain a transcript of any hearing on the motion to suppress.

[8] See Tenn. Code Ann. §§ 39-11-403(a) (2010), 39-13-402(a)(1) (2010).

[9] See Tenn. Code Ann. § 39-14-403(a) (2010).

[10] See Tenn. Code Ann. §§ 39-11-403(a), 39-14-103(a) (Supp. 2012).

-11-

*State's Notice of Intent to Seek Enhanced Punishment*

On May 10, 2011, the State filed its notice of intent to seek enhanced punishment ("the notice"). The notice declared the Defendant to be a career offender and listed the Defendant's prior qualifying convictions. On August 27, 2012, the first morning of trial, the trial court determined on the basis of the convictions listed in the notice that the Defendant was not a career offender but was a persistent offender.[11] Although defense counsel did not seek a continuance on this basis, the Defendant now contends that he should have been granted a continuance because "the district attorney failed to file a correct statement as to the defendant's prior convictions in the time specified by the statute."

This issue is waived because defense counsel did not seek a continuance on this basis, see Tenn. R. App. P. 36(a), and because this issue was not included in a timely filed motion for new trial. Moreover, this issue is without merit. Tennessee Code Annotated section 40-35-202(a) provides that, "[i]f the district attorney general believes that a defendant should be sentenced as a multiple offender, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial." Tenn. Code Ann. § 40-35-202(a) (2010). In this case, the State filed its notice more than one year before the Defendant's trial began. Therefore, the notice was timely.

The Defendant relies upon State v. Lowe, in which our supreme court held that a defendant has an absolute statutory right to a timely notice and that, when a defendant requests a continuance on the basis that the notice was untimely, the trial court "must either strike the notice of enhancement and proceed to trial, or grant a continuance of at least ten days from the date of the entry of the court order resetting the case for trial." 811 S.W.2d 526, 527 (Tenn. 1991); see also Tenn. R. Crim. P. 12.3 ("If the district attorney general intends to seek an enhanced punishment as a multiple, persistent, or career offender, the district attorney general shall file notice of this intention not less than ten (10) days before trial. If the notice is untimely, the trial judge shall grant the defendant, on motion, a reasonable continuance of the trial."). However, our supreme court also expressly approved its earlier holding that, "where a defendant does not request a continuance, the untimely notice of enhancement shall be valid." Lowe, 811 S.W.2d at 527 (citing State v. Stephenson, 752 S.W.2d 80, 81 (Tenn. 1988)).

---

[11] Career offenders are to be sentenced to the maximum sentence within Range III. See Tenn. Code Ann. § 40-35-108(c) (2010). Persistent offenders are to be sentenced within Range III. See id. § 40-35-107(c) (2010). Persistent offenders, therefore, may receive shorter sentences than career offenders.

Apparently, the Defendant posits that a timely notice which misstates the defendant's sentencing classification is the equivalent of an untimely notice. We disagree. As our supreme court has explained,

> The purpose of the statutory notice of intent to seek enhanced sentencing is to (a) provide fair notice to an accused that he/she is exposed to other than standard sentencing, (b) to facilitate plea bargaining, (c) to enable the accused to make an informed decision before entering a guilty plea, and (d) to a certain extent, to aid in trial strategy.

State v. Livingston, 197 S.W.3d 710, 712 (Tenn. 2006) (citing State v. Adams, 788 S.W.2d 557, 559 (Tenn. 1990); State v. Taylor, 63 S.W.3d 400, 412 (Tenn. Crim. App. 2001)). When the notice includes incorrect information, "the inquiry should be whether the notice was materially misleading." Adams, 788 S.W.2d at 559. Moreover, "when the State has substantially complied . . . , an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief." Id. Finally, this Court has concluded that a notice satisfies its purposes when the defendant is not misled or surprised by the prosecution's decision to seek enhanced sentencing. See State v. Chase, 873 S.W.2d 7, 9 (Tenn. Crim. App. 1993).

In this case, the notice informed the Defendant that he was a career offender for sentencing purposes. On the morning of trial, the trial court disagreed with the State's assessment of the Defendant's offender status and declared the Defendant to be a persistent offender, which was to the Defendant's benefit. The Defendant has not demonstrated how he was prejudiced by the State's mistake, nor has he demonstrated that he is entitled to plain error relief. Accordingly, the Defendant is not entitled to relief on this issue.

*Admissibility of the Defendant's Prior Convictions*

Prior to trial, the prosecutor asked the trial court to rule on which of the Defendant's prior convictions he would be allowed to use to cross-examine the Defendant should the Defendant choose to testify. The trial judge recited that, according to the information before him, the Defendant had six convictions for aggravated burglary, two convictions for burglary of an automobile, one conviction of theft over $500,[12] and one conviction of theft between $10,000 and $60,000. The trial court then asked defense counsel, "[W]hat is your position on the ability of the State to cross-examine [the Defendant] on these prior convictions?" Defense counsel replied, "We don't object if he chooses to testify." At the close of the State's proof, the Defendant chose not to testify. The Defendant now claims that he is

---

[12] The notice indicated that this conviction was for theft over $500, but the certified copy of the judgment order reflects that this conviction was for theft over $1,000.

entitled to relief on the basis of plain error implying that, had the trial court ruled these prior convictions to be inadmissible for impeachment purposes, he would have testified.

We disagree that the Defendant is entitled to plain error relief on this issue because he has failed to establish that the trial court's acquiescence to defense counsel's waiver breached a clear and unequivocal rule of law. Our Rules of Evidence provide that a trial court must determine the admissibility of a criminal defendant's prior convictions for impeachment purposes only "upon request." Tenn. R. Evid. 609(a)(3). The trial court breached no clear and unequivocal rule of law when it did not override defense counsel's decision not to object to the admissibility of the Defendant's prior convictions. Accordingly, the Defendant is not entitled to plain error relief on this issue.

*Jury Instructions*

The Defendant contends that the trial court erred in failing to charge the jury on theft as a lesser-included offense of aggravated robbery. This issue is waived. First, as set forth above, this issue was not included in a timely motion for new trial. Second, the record contains no written request by the Defendant for this charge. See Tenn. Code Ann. § 40-18-110(c) (2012); State v. Page, 184 S.W.3d 223, 229 (Tenn. 2006). Moreover, the Defendant has failed to satisfy the first prerequisite for plain error relief on this issue because the record on appeal does not contain the trial court's charge to the jury. Accordingly, the Defendant has not clearly established what instructions the trial court did and did not give.

Having both waived and failed to establish that he is entitled to plain error relief on this issue, the Defendant is not entitled to relief on this basis.

*Thirteenth Juror*

The Defendant contends that the trial court failed to discharge its duty to act as the thirteenth juror, alleging in his brief that "[t]he record does not reflect that the [trial] [c]ourt approved of the jury's verdict." The State responds that this issue is waived due to the Defendant's untimely motion for new trial and, furthermore, that the trial court stated that it approved of the jury's verdict during the hearing on the Defendant's motion for new trial.

Tennessee Rule of Criminal Procedure 33(d) provides that the trial court "may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." Tenn. R. Crim. P. 33(d). This Court has described this provision as "the modern equivalent to the 'thirteenth juror rule.'" State v. Blanton, 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996). According to our supreme court, "[t]he thirteenth juror rule originated at common law and requires the trial court to independently weigh the evidence, pass upon the issues, and decide whether the verdict is supported by the evidence." State v. Moats, 906

S.W.2d 431, 433 (Tenn. 1995) (citing Curran v. State, 4 S.W.2d 957, 958 (Tenn. 1928)). This fundamental duty requires the trial court to determine for itself whether the evidence adduced at trial established guilt beyond a reasonable doubt. See id. (citing Manning v. State, 292 S.W. 451, 457 (Tenn. 1927)). The trial court's mandatory review includes an evaluation of the credibility of the witnesses and an assessment of the weight of the evidence. Moats, 906 S.W.2d at 434-35; see also Blanton, 926 S.W.2d at 958 (thirteenth juror rule imposes a duty on the trial judge to "weigh the evidence and grant a new trial if the evidence preponderates against the weight of the verdict").

Rule 33(d), however, does not require the trial court to make an explicit statement on the record. Instead, this Court may presume that the trial court has served as the thirteenth juror and approved the jury's verdict when it simply overrules the defendant's motion for new trial. State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995). Only when the trial court makes statements on the record indicating disagreement with the jury's verdict, or indicating the trial court's failure or refusal to act as thirteenth juror, must this Court grant a new trial. See Moats, 906 S.W.2d at 435.

As pointed out by the Defendant, our supreme court has declared that "the trial court's approval of a criminal verdict as the thirteenth juror is a necessary prerequisite to the imposition of a valid judgment." Moats, 906 S.W.2d at 434. A strict reading of this language would imply that a trial court has to perform its duty as thirteenth juror *before* it enters judgment against the defendant. In practice, however, a trial court may satisfy its role as thirteenth juror simply by overruling the defendant's motion for new trial. See Carter, 896 S.W.2d at 122. Motions for new trial must be filed *after* the judgment of conviction is entered. See Tenn. R. Crim. P. 33(b); Hatcher, 310 S.W.3d at 799 ("Rule 33 clearly contemplates that the trial court will conduct the sentencing hearing and enter the uniform judgment order *before* any motion for new trial is filed."). Accordingly, it is clear that a trial court need not perform its duty as thirteenth juror before it enters the judgment of conviction.

Moreover, the Defendant has failed to demonstrate that he is entitled to plain error relief on this issue. As set forth above, the Defendant filed a motion for judgment of acquittal regarding his conviction for aggravated sexual battery on September 28, 2012, prior to the sentencing hearing. The parties argued this motion at the sentencing hearing, and defense counsel stated, "Your Honor is standing as the 13th juror in this matter." The trial court denied the Defendant's motion, specifically stating, "I'm going to approve that verdict and I'm not going to grant your motion." Accordingly, the record establishes that the trial court performed its duty to act as the thirteenth juror as to the Defendant's conviction of aggravated sexual battery. As to the remaining convictions, the trial court stated at the hearing on the motion for new trial that "there was sufficient evidence presented as to all of the other counts" and denied the Defendant's motion for new trial. Thus, the record does not affirmatively demonstrate that the trial court failed to satisfy its duty to act as the thirteenth

juror.[13] Therefore, the Defendant has failed to establish that he is entitled to plain error relief on this issue.

*Sentencing*

The Defendant contends that the trial court erred in sentencing him as a Range III, persistent offender. As set forth above, the Defendant's prior convictions consist of six aggravated burglaries, two burglaries of a motor vehicle, one theft over $1,000, and one theft over $10,000. One of the aggravated burglaries and one of the motor vehicle burglaries were committed on July 17, 2008. The remaining aggravated burglaries were committed on July 4, 2008, July 22, 2008, July 23, 2008, August 21, 2008, and August 22, 2008. The theft over $1,000 was committed on July 20, 2008, and the theft over $10,000 was committed on July 19, 2008, as was the remaining motor vehicle burglary. The Defendant contends that all of these offenses other than the aggravated burglary committed on July 4, 2008, "were committed in such close proximity in time that they should be treated as one prior conviction for the purposes of sentence enhancement." The State disagrees.

Tennessee Code Annotated section 40-35-107 provides that a "persistent offender is a defendant who has received . . . [a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes, where applicable." Tenn. Code Ann. § 40-35-107(a)(1) (2010). Prior convictions are those "for an offense occurring prior to the commission of the offense for which the defendant is being sentenced." Id. at (b)(1). However,

> [e]xcept for convictions for which the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury to the victim or victims or convictions for the offense of aggravated burglary under § 39-14-403 [committed on or after August 17, 2009], convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions.

Id. at (b)(4).

---

[13] We recognize that, because of the Defendant's failure to file timely his motion for new trial, the trial court did not have jurisdiction of this case at the motion for new trial hearing. Nevertheless, we decline to reward the Defendant's procedural default by a conclusion that the trial court failed to act as thirteenth juror. Rather, in the absence of evidence to the contrary, we presume that the trial judge was simply voicing a decision he previously had reached after the jury returned its verdict and within thirty days of entering the judgment orders.

In this case, the Defendant was convicted of one count of aggravated sexual battery, a Class B felony[14]; two counts of facilitation to commit aggravated robbery, a Class C felony[15]; one count of aggravated burglary, a Class C felony[16]; and one count of facilitation of theft over $500, a misdemeanor.[17]  The Defendant's prior felony convictions consist of Class C felonies (the aggravated burglaries, see id. § 39-14-403(b) (2006), and theft over $10,000, see id. § 39-14-105(4)(2006)); a Class D felony (theft over $1,000, see id. § 39-14-105(3)(2006)); and Class E felonies (the motor vehicle burglaries, see id. § 39-14-402(d)(2006)).  None of the statutes proscribing these prior felonies include serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury to the victim or victims as a necessary element.  See id. §§ 39-14-103(2006), 39-14-402, 39-14-403.

In determining the Defendant's prior felonies for offender classification purposes, the trial court merged the motor vehicle burglary and the aggravated burglary committed on July 17, 2008; merged the motor vehicle burglary and the two thefts committed on July 19 and 20, 2008; merged the two aggravated burglaries committed on July 22 and 23, 2008; and merged the two aggravated burglaries committed on August 21 and 22, 2008.  Combined with the single aggravated burglary committed on July 4, 2008, the trial court determined that, for offender classification purposes, the Defendant had five prior Class C felonies.  Therefore, the trial court determined that the Defendant was a persistent offender and sentenced him accordingly.

The Defendant's contention that the trial court should have merged into a single conviction all of the convictions he committed over the seven-day period spanning July 17, 2008, through July 23, 2008, is without merit.  See State v. Doyle Everette Haney, No. E2010-02151-CCA-R3CD, 2012 WL 2343619, at *9 (Tenn. Crim. App. June 20, 2012) (rejecting defendant's contention that convictions for drug sales committed on November 22, 25, and 29, 1993; December 14 and 27, 1993; and January 4, 12, and 27, 1994, were a single course of criminal conduct and should be merged for sentencing classification purposes), perm. app. denied (Tenn. Sept. 18, 2012).  The Defendant is not entitled to relief from his being sentenced as a persistent, Range III offender.

---

[14] See Tenn. Code Ann. § 39-13-504(b).

[15] See Tenn. Code Ann. §§ 39-11-403(b), 39-13-402(b).

[16] See Tenn. Code Ann. § 39-14-403(b).

[17] See Tenn. Code Ann. §§ 39-11-403(b), 39-14-105(2) (2010).

## **Conclusion**

For the foregoing reasons, we conclude that the Defendant is not entitled to relief on any of his issues. Accordingly, we affirm the trial court's judgments.

_____
JEFFREY S. BIVINS, JUDGE